4

00033

# APPLICATION FOR CORRECTION OF MILITARY RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552

*(Please read Instructions on reverse side BEFORE completing application.)*

*Form Approved*
*OMB No. 0704-0003*
*Expires Aug 31, 2000*

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to Department of Defense, Washington Headquarters Services, Directorate for Information Operations and Reports (0704-0003), 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.
PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE ABOVE ADDRESS. RETURN COMPLETED FORM TO THE APPROPRIATE ADDRESS ON THE BACK OF THIS PAGE.

## PRIVACY ACT STATEMENT

AUTHORITY: Title 10 US Code 1552, EO 9397.

PRINCIPAL PURPOSE: To initiate an application for correction of military record. The form is used by Board members for review of pertinent information in making a determination of relief through correction of a military record.

ROUTINE USE(S): None. Keller

DISCLOSURE: Voluntary; however, failure to provide identifying information may impede processing of this application. The request for Social Security number is strictly to assure proper identification of the individual and appropriate records.

**1. APPLICANT DATA**

a. BRANCH OF SERVICE *(X one)*: [X] ARMY [ ] NAVY [ ] AIR FORCE [ ] MARINE CORPS [ ] COAST GUARD

b. NAME *(Last, First, Middle Initial) (Please print)*: Fontana, John L.

c. PRESENT PAY GRADE: O-4

d. SERVICE NUMBER *(If applicable)*: N/A

e. SSN: 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

**2. TYPE OF DISCHARGE** *(If by court-martial, state type of court)*: N/A

**3. PRESENT STATUS, IF ANY, WITH RESPECT TO THE ARMED SERVICES** *(Active duty, Retired, Reserve, etc.)*: Active Duty

**4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY**: N/A

**5. ORGANIZATION AT TIME OF ALLEGED ERROR IN RECORD**: US Army

**6. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C.** *(No expense to the Government) (X one)*: [ ] YES [X] NO

**7. COUNSEL** *(If any)*

a. NAME *(Last, First, Middle Initial)*: NONE

b. ADDRESS *(Street, Apartment Number, City, State and ZIP Code)*:

**8. I REQUEST THE FOLLOWING CORRECTION OF ERROR OR INJUSTICE:**

Re-institution of credit for time in service for pay purposes during my service as a 2nd LT attending USUHS from 1983-1987. This requires an administrative change in the date of entrance into USUHS to 14 SEP 1981.

**9. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST IN THE FOLLOWING PARTICULARS:**

There is a pay descrepency between myself, at least 20 Air Force officers and one Army officer.

**10. IN SUPPORT OF THIS APPLICATION I SUBMIT AS EVIDENCE THE FOLLOWING:** *(If Veterans Administration records are pertinent to your case, give Regional Office location and Claim Number.)*

Please see enclosed statment with attachments.

**11. ALLEGED ERROR OR INJUSTICE**

a. DATE OF DISCOVERY: March 1998

b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THIS APPLICATION.

This is a request for correction of an injustice originally petitioned for in 1986 (Docket number AC90-10722). New material evidence which may be grounds for reversal of the original decision is presented herein.

**12. APPLICANT MUST SIGN IN ITEM 16. IF THE RECORD IN QUESTION IS THAT OF A DECEASED OR INCOMPETENT PERSON, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY APPLICATION. IF APPLICATION IS SIGNED BY OTHER THAN APPLICANT, INDICATE RELATIONSHIP OR STATUS BY MARKING APPROPRIATE BOX.**

[ ] SPOUSE [ ] WIDOW [ ] WIDOWER [ ] NEXT OF KIN [ ] LEGAL REPRESENTATIVE [ ] OTHER *(Specify)*

**13. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM.** *(U.S. Code, Title 18, Sec 287, 1001, provides that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

**14.a. COMPLETE CURRENT ADDRESS, INCLUDING ZIP CODE** *(Applicant should forward notification of all changes of address.)*

12011 Blackberry Terrace
North Potomac, MD 20878

b. TELEPHONE NUMBER *(Include Area Code)*: (202) 782-0039

DOCUMENT NUMBER *(Do not write in this space.)*: AC-90-10722 AR

**15. DATE SIGNED**: 25 AUG 98

**16. SIGNATURE** *(Applicant must sign here.)*: [signature]

00034

25 August 1998

ECKLUND HAD A POWERFUL CONGRESSMAN IN HIS CORNER BILL YOUNG (FLA.)

To: US Army Board for Correction of Military Records

From: MAJ Fontana

Subject: Request for reconsideration of Docket Number AC90-10722.

1. This application is submitted to correct an injustice that exists between myself and a fellow United States Military Academy classmate. My case is identical to that of LTC James Ecklund who was granted four years of constructive service credit for basic pay and longevity for his service time at The Uniformed Services University of the Health Sciences (USUHS) from 1983 through 1987. My case documentation is the same as his and I am petitioning for similar relief.

2. Please find attached a copy of the recent packet submitted by LTC Ecklund that resulted in his receiving relief form the Board of corrections. In brief, there are at least twenty Air Force officers who have received four years credit for basic pay and longevity and now one Army officer from my class at both The United States Military Academy and USUHS. My case is identical to LTC Ecklund's and is summarized as follows. I was a cadet at USMA with LTC Ecklund between July 1979 and May 1983. During that time we received briefings by COL John Treanor who was the United States Military Academy Chairman of the Medical Programs Advisory Committee. In that capacity, COL Treanor counseled myself and other applicants for medical school that credit for pay and longevity would accrue for students during time spent in medical school and, as such, would not disadvantage those of us going to medical school but would place us in an equivalent position with our other USMA classmates. Trusting this information to be correct, I used it to make career decisions. Upon graduation from USMA, I resigned my regular commission and took an active reserve commission to serve in the Medical Service Corps as a second lieutenant for four years during medical school. Only after beginning medical school at USUHS did I receive proper counseling regarding the true impact of DOPMA. By this time I was placed in the position of either continuing my medical education or choosing to enter the Army as a line officer. I was miscounseled by an official whose position was to counsel those going to medical school from USMA and, relying on this information, made a decision that was to my detriment.

NON SERVICE ACADEMY APPLICANT DID NOT HAVE ACCESS TO SUCH A COMMITTEE. THEY HAD TO RELY ON THE INFORMATION SUPPLIED BY USUHS OFFICIALS.

THIS IS MOOT

3. In 1986 I unsuccessfully petitioned the board to correct this injustice. This petition was denied relief because there was no documentation to support the claim of miscounseling. The attached letter from COL (ret) Treanor now provides the documentation of miscounseling and is new material evidence pertaining directly to the case.

4. My case is identical in every way to that of LTC Ecklund's for which he received relief and was granted four years credit for pay and longevity. This injustice of the initial event and the inequity that presently exists between myself, and my fellow officers can be corrected by crediting my four years of medical school for pay and longevity calculations.

J. L. Fontana

John L. Fontana
MAJ, MC, USA

Attachments
1. DD149
2. Letter from COL Treanor
3. Copy of LTC Ecklund's packet to the board with all associated documentation.

00035

5

DEPARTMENT OF THE ARMY
OFFICE OF THE ASSISTANT SECRETARY
2ND FLOOR, 1941 JEFFERSON DAVIS HIGHWAY
ARLINGTON, VA 22202-4508

REPLY TO
ATTENTION OF

SFMR-RBR

Dear Applicant:

A favorable decision has been made on your application for correction of military records. A copy of the approved Proceedings of the Board is enclosed for your information.

The approved Proceedings have been forwarded to the Total Army Personnel Command. They will take action to correct your records and will provide you with official notification as soon as correction action has been taken.

Further inquiry concerning your case should be addressed to Commander, Total Army Personnel Command, ATTN: TAPC-MSE-A, 200 Stovall Street, Alexandria, Virginia 22332-0400.

Sincerely,

Karl F. Schneider
Deputy Assistant Secretary
(Army Review Boards)

Enclosure

OMPF
SFMR-RBR

FONTANA

S: 13 Dec 99

SFMR-RBR - 1st End (23 Sep 99, Docket Number AR1999025824)
SUBJECT: ABCMR Proceedings

HQDA, OASA, Arlington, Virginia 22202-4508 7 Oct 99

TO: Commander, US Total Army Personnel Command,
ATTN: TAPC-MSE-A, 200 Stovall Street,
Alexandria, Virginia 22332-0400

1. Under the authority of Title 10, United States Code, section 1552, the recommendation of the Army Board for Correction of Military Records is hereby approved, and it is directed that all of the Department of the Army records of the individual concerned be corrected as shown under Recommendation in the Proceedings of the Board in this case.

2. Request necessary administrative action be taken to effect the correction of records as indicated no later than 13 December 1999. Further, request that the individual concerned and counsel, if any, as well as any members of Congress who have shown interest be advised of the correction and that the Board for Correction of Military Records be furnished a copy of the correspondence.

BY ORDER OF THE SECRETARY OF THE ARMY:

Encls

Karl F. Schneider
Deputy Assistant Secretary
(Army Review Boards)

CF:
Applicant

( )DFAS
( )SFMR

DEPARTMENT OF THE ARMY
BOARD FOR CORRECTION OF MILITARY RECORDS
1941 JEFFERSON-DAVIS HIGHWAY, 2ND FLOOR
ARLINGTON VA 22202-4508

# PROCEEDINGS

IN THE CASE OF: FONTANA, JOHN L.
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

BOARD DATE: 23 September 1999
DOCKET NUMBER: AR1999025824

I certify that hereinafter is recorded the true and complete record of the proceedings of the Army Board for Correction of Military Records in the case of the above-named individual.

| | |
|---|---|
| Mr. Loren G. Harrell | Director |
| Mr. David H. Keller | Analyst |

The following members, a quorum, were present:

| | |
|---|---|
| Mr. Ernest M. Willcher | Chairperson |
| Mr. Melvin H. Meyer | Member |
| Ms. Barbara J. Ellis | Member |

The applicant and counsel if any, did not appear before the Board.

The Board considered the following evidence:

Exhibit A - Application for correction of military records

Exhibit B - Military Personnel Records (including advisory opinion, if any)

NOTICE THE PERSONNEL ARE ALL DIFFERENT FROM HIS ORIGINAL DENIAL UNFORTUNATELY - THE NAVY BOARD WAS THE SAME OLD GUARD CREW THAT HAS CONSISTENTLY REJECTED OUR PLEAS.

## FINDINGS:

1. The applicant has exhausted or the Board has waived the requirement for exhaustion of all administrative remedies afforded by existing law or regulations.

2. The applicant requests that he be awarded 4 years' constructive service credit for longevity pay purposes based upon his graduation from the Uniformed Services University of the Health Sciences (USUHS), Class of 1987. The USUHS is a medical doctor accession program that provides for the training and commissioning of doctors in the Medical Corps of the Armed Services. In effect, the applicant's request requires an administrative change in the date of his entrance into USUHS to 14 September 1981, the day before the effective date of the Defense Officer Personnel Management Act (DOPMA).

3. The applicant states, in effect, that upon graduating from the United States Military Academy (USMA), he resigned his Regular Army (RA) appointment and accepted the USUHS agreement and a US Army Reserve (USAR) appointment with the understanding that he would receive 4 years of longevity credit for his 4 years at medical school, thereby remaining on par with his USMA peers. This understanding was fostered through various USUHS briefings provided to selected USMA cadets by the then Acting Surgeon, USMA, and Chairman, Medical Program Advisory Committee. The applicant adds that of 18 USMA second lieutenants selected for medical school, 12 attended the USUHS at Bethesda, Maryland (Class of 1987) from 15 August 1983 to 16 May 1987. When he graduated from medical school, he was appointed a Regular Army captain in the Medical Corps on 16 May 1987, but did not receive longevity credit for his 4 years of training. At least 20 Air Force officers—former US Air Force Academy (USAFA) cadets—who attended the same USUHS class from 1983 to 1987 did receive 4 years of longevity credit when the Air Force Board for Correction of Military Records administratively changed their dates of enrollment to 14 September 1981 (the day before the effective date of DOPMA). The Air Force action was predicated upon the fact that these cadets had received USUHS briefings assuring them that they would receive such credit.

4. On 29 August 1979, the Comptroller General (B-195242) ruled that payment could not be made to an Army member's claim for reimbursement of costs not authorized by law and regulation, even though he was erroneously advised by Army officials; and that, in the absence of specific statutory authority, the United States was not liable for the negligent or erroneous acts of its officers, agents or employees, and the member, therefore, gained no entitlement to the expenditures by reason of erroneous advice.

5. On 17 June 1985, the Office of The Judge Advocate General (OTJAG) advised the Board that, in order for USUHS graduates to receive longevity credit under Title 37, United States Code, section 205(a)(6), the provision of law which was repealed by DOPMA, they must have been enrolled in the USUHS as of 14 September 1981, the day before the effective date of DOPMA. Accordingly, it was the opinion of OTJAG that the failure to credit periods of service while attending USUHS for individuals enrolled on or after 15 September 1981 did not constitute an error entitling the applicant to the relief sought as a matter of law.

00010

6. On 10 July 1985, the Office of The Surgeon General advised the Board that all interested USUHS matriculates were verbally informed of the change in law and that prior inaccurate or incomplete information received by prospective students from official/semi-official sources should not be relevant in determining appropriate relief.

7. On 25 July 1997, the applicant's Congressional representative, after corresponding with the Secretary of Defense on a similar case, submitted copies of his query to this Board (there is no record of the Board having received this correspondence). It was requested that relief be granted since the applicant was incorrectly advised concerning longevity credit by officials at the USMA. The Department of Defense response was that "in the absence of clear-cut evidence of miscounseling (sic), no reason exists to recommend relief."

8. The applicant submitted an 8 March 1996 statement by a Colonel, US Army (Retired) who certified that, in 1982, in his capacity as the Acting Surgeon, USMA, and Chairman, Medical Program Advisory Committee, he instructed the applicant and all other cadets selected for attendance at the USUHS regarding rules and regulations governing the USUHS program for medical students. He stated that pertinent regulations in effect at that time directed longevity credit for pay purposes be awarded for time spent in medical school. The applicant and all other selected cadets were so instructed by himself and the other members of the Advisory Committee.

ALL OF THESE CADETS ALSO RECEIVED INTERVIEWS AND COUNSELING FROM USUHS REPRESENTATIVES.

CONCLUSIONS:

1. In response to a Congressional inquiry which has not previously been seen by this Board, the Department of Defense stated that the plain and unambiguous language of DOPMA left no doubt that the Congress intended that, effective 15 September 1981, graduates from government-sponsored medical schools would no longer be entitled to longevity credit for basic pay computation purposes. Furthermore, no reason exists to recommend relief without clear-cut evidence of improper counseling, and a reasonable belief that the individual still relied on such improper counseling years after the effective date of the law.

2. The applicant submitted new evidence not previously seen by this Board in the form of a certificate from the former Surgeon, USMA, and Chairman, Medical Program Advisory Committee, stating that he specifically instructed the applicant (then a USMA Cadet) that regulations, then in effect, directed that longevity credit for pay purposes would accrue for students during time spent in medical school. It, therefore, appears that the applicant was specifically misinformed by the responsible counselors at the USMA concerning the granting of longevity credit for pay purposes during time spent at the USUHS.

THIS MAY BE KEY VERBAGE!

ABCMR Proceedings (cont) AR1999025824

3. The applicant made a detrimental career decision based on erroneous information from the Acting Surgeon, USMA, and Chairman, Medical Program Advisory Committee. As a USMA graduate, the applicant would have most likely pursued other career options rather than lose 4 years' service credit had he not been misinformed.

INTERESTING: GOOD COUNTER TO THE BCNR CONTENTION THAT THEIR DECISION ARE NEVER INFLUENCED BY WHAT OTHER BOARDS DECIDE:

4. The Air Force Board for Correction of Military Records has already granted relief to former USAFA Cadets who were similarly counseled and used such counseling as part of their decision process in enrolling in the USUHS Class of 1987.

5. In view of the foregoing findings and conclusions, it would be appropriate to correct the applicant's records as recommended below.

RECOMMENDATION:

That all of the Department of the Army records related to this case be corrected to show:

a. That the individual concerned was enrolled in the Uniformed Services University of the Health Services on 14 September 1981; and

b. That he was awarded constructive service credit for basic pay purposes only while attending the Uniformed Services University of the Health Services at Bethesda, Maryland, from 15 August 1983 to 16 May 1987.

BOARD VOTE:

Ew BE MM GRANT AS STATED IN RECOMMENDATION

_____ _____ _____ GRANT FORMAL HEARING

_____ _____ _____ DENY APPLICATION

Ernest M. Willcher
CHAIRPERSON

6

00043

DEPARTMENT OF THE NAVY
OFFICE OF THE JUDGE ADVOCATE GENERAL
200 STOVALL STREET
ALEXANDRIA, VA 22332

IN REPLY REFER TO
1070
Ser 131/11393/5
5 Aug 85

From: Judge Advocate General
To: Chairman, Board for Correction of Naval Records

Subj: REQUEST FOR ADVISORY OPINION IN THE CASE OF ENSIGN [redacted] USNR, [redacted]

Ref: (a) Your memo GLA:R:tat Docket No. [redacted] of 12 Jun 85

1. Issue presented. By reference (a), paragraph 6, you requested my opinion on the following question: "[May BCNR legally act] in a similar manner to the Air Force Correction Board, which in essence [would treat 48 post-DOPMA enrolled] naval officers at USUHS [as having enrolled prior to the effective date of DOPMA] at a time when they had not yet met the preliminary requirements for admission, i.e., they were still in undergraduate school[?]"

2. Short answer. The Board for Correction of Naval Records (BCNR) has the jurisdictional authority to consider the case of ENS [redacted] USNR, and those similarly situated. The Secretary of the Navy, acting through BCNR, may correct naval records when he considers it necessary to correct an error or remove an injustice. These cases pertain to naval records and, even though the records reflect accurate enrollment dates, these cases are premised on an alleged injustice with respect to those dates. Therefore, BCNR may legally act to backdate the enrollments, as did the Air Force Board for Correction of Military Records (AFBCMR), if BCNR considers it necessary in order to remove an injustice.

3. Discussion. Congress granted authority to the Secretary of the Navy to correct the naval records of members of the Navy Department when he considers it necessary to correct an error or remove an injustice.[1] The authority may be exercised only under procedures established by the Secretary and approved by the Secretary of Defense, and only by acting through BCNR.[2] The purpose of delegating such broad authority was to free Congress of the burden of correcting individual injustices to servicemembers through private bills.[3] Congress created an administrative body of last resort, prohibiting Congressional consideration of private bills for the correction of military or naval records.[4] As a remedial provision and substitute for the old method, the statute is to be liberally construed so as to make resort to private relief

---

1 10 U.S.C. § 1552(a) (1982).

2 See Proper v. United States, 139 Ct. Cl. 511, 526 (1957).

3 E.g., Sherengos v. Seamans, 449 F.2d 333, 334 (1971).

4 2 U.S.C. § 190(g) (1982). 32 C.F.R. § 723.1 (1984).

Subj: REQUEST FOR ADVISORY OPINION IN THE CASE OF ENSIGN [redacted], USNR,

bills unnecessary.[5] Such delegated authority is properly limited in its intended scope by the provisions "under procedures established by [the Secretary of the Navy] and approved by the Secretary of Defense" and "when [the Secretary of the Navy] considers it necessary."[6]

a. The broad delegation of authority by Congress to the Secretary, acting through BCNR, is sufficiently limited by the standards "to correct an error" and to "remove an injustice" through the correction of naval records that it withstands scrutiny as an unlawful delegation of legislative authority.[7] The power to effect the dual standards must be exercised on the basis of a record that will establish the standards prescribed, i.e., "correction of an error or removal of an injustice."[8] Thus, BCNR has jurisdictional authority when an applicant can establish two elements: (1) the case pertains to a record created or maintained under the authority of the Secretary of the Navy, and (2) the case is premised on a contention of error or injustice with respect to that record.[9] BCNR may engage in a fiction to provide an appropriate remedy and, thereby, give effect to its intended purpose.[10]

NOTICE THAT EQUITY AND FAIRNESS ARE NOT INCLUDED IN THE STANDARDS

b. An "error" or "injustice" need not have been caused by the service concerned before remedial action may be taken under 10 U.S.C. § 1552.[11] BCNR has jurisdictional authority to consider whether an injustice occurred due to a member's lack of knowledge and consequent inability to act upon changes in federal law in order to restore benefits no longer available to him by statute.[12] BCNR has authority to backdate records in order to remove an unintended injustice resulting from an act of the United States Senate.[13]

THIS IS CONTRARY TO THE PHILOSOPHY ADVOCATED ON PG.3 OF THE ORIGINAL DECISION AGAINST JOHN FONTANA

---

5 40 Op. Att'y Gen. 504, 508 (1947).

6 See id.

7 41 Op. Att'y Gen. 94, 97 (1952).

8 Memo JAG:002:tg of 28 Aug 64 for ADM Hare, Subj: Views on Legal Power of the Secretary and BCNR under 10 U.S.C. § 1552.

9 DAJAG memo JAG:131.6:GNG:jh of 3 Sep 82 for COMNAVMILPERSCOM, Subj: LT Moody, Temporary Appointment and Date of Rank Adjustment to LCDR.

10 See 41 Op. Att'y Gen. 71, 74 (1951).

11 41 Op. Att'y Gen. 94, 97 (1952).

12 Id.

13 JAG memo JAG:131.6:WDB:jgd of 5 Dec 80 for COMNAVMILPERSCOM, Subj: Appointments of Limited Duty Officers in the Line of the Regular Navy to the Grade of LTJG; Corrective Action Concerning.

Subj: REQUEST FOR ADVISORY OPINION IN THE CASE OF ENSIGN [redacted], USNR, [redacted]

c. The procedures established for BCNR do not restrict the broad jurisdictional authority otherwise given.[14]

d. Normally, all periods of active service by a member of a uniformed service are creditable toward computing basic pay.[15] Active service performed while enrolled in the Uniformed Services University of the Health Sciences (USUHS) is not counted in computing the years of service otherwise creditable under 37 U.S.C. § 205.[16] Before 15 September 1985 [the effective date of the Defense Officer Personnel Management Act (DOPMA) of 1980] medical officers were permitted four years of creditable constructive service for the purpose of computing basic pay.[17] Congress enacted a savings provision for the constructive service previously granted USUHS graduates appointed as medical officers.[18] The savings provision "grandfathered" USUHS students enrolled on the day before the effective date of the Act.[19] → 14 Sept. 1981

e. The petition of ENS [redacted] USNR, is representative of students enrolled at USUHS for the class of 1986.[20] The AFBCMR found "probable error or injustice" regarding 45 members of the Air Force enrolled in that class.[21] AFBCMR recommended the enrollment dates for the 45 members be adjusted to reflect fictitious enrollment on 14 September 1981.[22] The foundation for that finding was evidence that those students, before enrollment in September 1982, were incorrectly promised four years of constructive service credit, both orally and in writing, by officials of USUHS. The students were correctly informed that they were not eligible to receive the former constructive service credit only after they enrolled; thus, in varying degrees, the students had detrimentally relied on the misinformation when settling on their medical school choice.[23]

Sound familiar ?

---

14 32 C.F.R. § 723.2(c) (1984).

15 37 U.S.C. § 205(a) (1982).

16 10 U.S.C. § 2126 (1982) and 10 U.S.C. § 2114(b) (1982).

17 37 U.S.C. § 205 note (1982) (Amendments).

18 Defense Officer Personnel Management Act, Pub. L. No. 96-513, sec. 625(b), 94 Stat. 2952 (1980), 10 U.S.C. § 611 note (1982).

19 Id. at sec. 625(b)(2).

20 Ref. (a).

21 Ref. (a), encl. (4), in re Applegate et. al., Doc. Nos. 85-01178--85-01222, A.F.B.C.M.R.

22 Id.

23 See id., exhibits B, C.

Subj: REQUEST FOR ADVISORY OPINION IN THE CASE OF ENSIGN [redacted] USNR, [redacted]

f. The USUHS class of 1986 applicants in these cases may obtain no judicial relief upon a claim of estoppel because USUHS officials have no authority to waive statutes passed by Congress.[24] Also, citizens are held to constructive knowledge of the laws passed by Congress.[25] Nevertheless, the facts surrounding such an estoppel claim may be considered by BCNR when it determines whether, under the circumstances, an "injustice" exists.[26]

PARDON MY FRENCH — "BULLSHIT"

g. Each correction board functions independently of the others, under procedures established by their respective Secretaries.[27] While the decision of AFBCMR in these cases may be taken as a persuasive prior opinion, BCNR must make its own independent determination concerning the case within its jurisdiction. Disparate treatment of similarly situated persons may be considered, however, for its effect on notions of justice.

h. The understanding expressed by Congressman Les Aspin, Chairman, Military Personnel and Compensation Subcommittee, Committee on Armed Services, that the USUHS students could seek relief via 10 U.S.C. § 1552,[28] supports the exercise of jurisdictional authority by BCNR over these cases.

AS IS ONE "FICTIONS" OF BCNR AS RELIED ON IN THE PAST. TO SIMPLY SAYING TO ENSURE OTHER SERVICE BOARDS HAVE APPROVED APPLICANTS

4. Conclusion. The Secretary acts through BCNR for two purposes; i.e., to correct errors or remove injustices through the correction of naval records. The grant of authority by Congress was intentionally broad. Occasionally, resort to a fiction is necessary to do what should be done. It is entirely the responsibility of the Secretary of the Navy and BCNR to decide the threshold question of whether or not an injustice has been done regarding the 1982 enrollment dates of the applicant USUHS students. No opinion or position on that question is expressed in this memorandum. BCNR may exercise its jurisdictional authority over this case. It may recommend backdating petitioners' enrollment dates in their military records, or other corrective action deemed appropriate, if it is necessary to remove an injustice.

J. L. Hoffman Jr.
J. L. HOFFMAN, JR.
By direction

---

24 See Montilla v. United States, 457 F.2d 978 (1972). See also Campbell v. United States, 7 Cl. Ct. 195, 198 (1985) (upholding Montilla, concerning a claim of estoppel).

25 Montilla, at 986, 198 Ct. Cl. at 63.

26 See Gloser and Rosenberg, Military Correction Boards: Administrative Process and Review by the United States Court of Claims, 23 Am. Univ. L. Rev. 391, 407-09 (1973).

27 E.g., Flute v. United States, 535 F.2d 624, 629 (1976).

28 Ref. (a), encl. (3) of encl. (1). See also ref. (a), encl. (4) of encl. (1) (concurring statement of Rep. Holt). See also ref. (a), encl. (2) [similar statement of Asst. Sec. of Defense Calhoun].

7

DEPARTMENT OF THE ARMY
BOARD FOR CORRECTION OF MILITARY RECORDS
1941 JEFFERSON DAVIS HIGHWAY, 2ND FLOOR
ARLINGTON, VA 22202-4508

PROCEEDINGS

IN THE CASE OF: ECKLUND, JAMES M.
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

BOARD DATE: 17 June 1998
DOCKET NUMBER: AC90-10720A

I certify that hereinafter is recorded the true and complete record of the proceedings of the Army Board for Correction of Military Records in the case of the above-named individual. The following members, a quorum, were present:

| | |
|---|---|
| Mr. Curtis W. Barbee Jr. | Chairperson |
| Ms. Karen L. Wolff | Member |
| Mr. Edward Williamson | Member |

Also present, without vote, were:

| | |
|---|---|
| Mr. Loren G. Harrell | Director — WAS ALSO PRESENT AT FORMAL APPROVAL |
| Mr. George Sowa | Examiner |

The applicant and counsel if any, did not appear before the Board.

The applicant requests correction of military records as stated in the application to the Board and as restated herein.

The Board considered the following evidence:

Exhibit A - Application for correction of military records
Exhibit B - Military Personnel Records (including advisory opinion, if any)

FINDINGS:

1. The applicant has exhausted or the Board has waived the requirement for exhaustion of all administrative remedies afforded by existing law or regulations.

2. The applicant requests reconsideration of his previous appeal that he be awarded 4 years constructive service credit (CSC) for longevity pay purposes upon graduating from the Uniformed Services University of the Health Sciences (USUHS), class of 1987, which would require an administrative change in the date of entrance into USUHS to 14 September 1981.

3. The applicant further states in effect, that upon graduation from the United States Military Academy at West Point, ranked 16th of 867, he resigned his infantry branch choice and accepted the USUHS agreement with the understanding that he would receive longevity credit for his years at medical school and thereby remain on par with his academy peers. That of 18 West Point second lieutenants selected for medical school, only 12 attended USUHS at Bethesda, Maryland from 15 August 1983 to 16 May 1987. That he was appointed a captain in the Medical Corps, Regular Army, on 16 May 1987. He further provides documentation indicating that at least 20 Air Force officers attending the same USUHS from 1983 to 1987 were granted enrollment dates as of 14 September 1981, the day before the effective day of the DOPMA, thereby resulting in a pay discrepancy and his being placed at a disadvantage by virtue of his Army service.

4. On 29 August 1979, the Comptroller General (B-195242), had ruled that payment could not be made to an Army member's claim for reimbursement of costs not authorized by law and regulation, even though he was erroneously advised by Army officials; and that, in the absence of specific statutory authority, the United States was not liable for the negligent or erroneous acts of its officers, agents or employees, and the member, therefore, gained no entitlement to the expenditures by reason of erroneous advice.

5. On 17 June 1985, the Office of The Judge Advocate General advised this Board that, in order to receive credit under Title 37, United States Code (U.S.C.), section 205 (a) (6), which was repealed by the Defense Officer Personnel Management Act (DOPMA), a student had to be enrolled in USUHS as of 14 September 1981, the day before the effective day of the DOPMA; that, accordingly, it was their opinion that the failure to credit periods of service while attending USUHS for individuals after 15 September 1981 did not constitute an error entitling the applicant to the relief sought as a matter of law.

6. On 10 July 1985, the Office of The Surgeon General advised this Board, that all interested matriculants were verbally informed of the change in law; that, additionally, inaccurate or incomplete information received from officials/semi-official sources should not be relevant in determining appropriate relief.

7. On 6 November 1985, the Deputy Assistant Secretary DA Review Boards, approved this Board's 23 October 1985 findings, conclusions and recommendation that the records of the members of the class entering the USUHS during July and August 1982, be corrected to show that, for the sole purpose of being credited for basic (longevity) pay, they enrolled in the USUHS on 14 September 1981. In approving this relief it was specifically pointed out that with respect to the Army students no error or injustice was established which would entitle them the specific relief afforded the other services' participants.

8. On 16 February 1991 this Board denied the applicant's request that he be granted longevity credit for pay purposes from 1983 to 1987 during the time that he spent in medical school. His application for reconsideration dated 19 April 1996 was based on the Air Force Correction Board granting longevity credit to at least 18 USUHS graduates of both classes of 1987 to 1988 who received essentially identical miscounselling as he did when they were cadets. Reconsideration of this request was denied by the staff of the Board on 12 July 1996.

C.W. "Bill" Young

9. Subsequently on 25 July 1997 after corresponding with the Secretary of Defense, the applicant's Congressional representative submitted copies of his query to this Board (there is no record of the Board having received this correspondence). It was requested that relief be granted since the applicant was miscounselled by advisors at the Military Academy.

10. The Department of Defense response was "in the absence of clear - cut evidence of miscounselling " no reason exists to recommend relief.

11. Attached was a statement by a Colonel US Army "Retired" dated 8 March 1996 who certified that in 1982 as the acting Surgeon, United States Military Academy and Chairman, Medical Program Advisory Committee, in that capacity he instructed Cadet —— (the applicant) regarding rules and regulations governing the USUHS program for medical students. That regulations at that time directed longevity credit for pay purposes during time spent in medical school and the applicant was so instructed by himself and the other members of the Advisory Committee.

12. On 20 March 1998 the Congressional Representative enclosed his prior correspondence of 25 July 1997 indicating that since no response was received on his prior request, the status of the application was requested and that he would appreciate an immediate response.

13. Recently the applicant was advised by the Social Security Administration that in 1976 he was provided an incorrect social security number 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 which belongs to another person and all of his social security records will contain the number 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.

CONCLUSIONS:

1. The applicant's prior request for reconsideration on 7 April 1996 was denied by the staff of the Board on the basis that insufficient evidence had been presented to indicate probable material error or injustice. Merely citing favorable actions by the Air Force Board for Correction of Military Records did not amount to sufficient evidence to establish error or injustice in his case and that the ABCMR was not bound by actions of correction boards of the other services.

2. In response to a congressional inquiry which has not previously been seen by this Board, the Department of Defense replied that the plain and unambiguous language of DOPMA leaves no doubt that the Congress intended that effective 15 September 1981 graduates from government - sponsored medical schools would no longer be entitled to constructive service for computation of basic pay. Therefore, in the absence of clear - cut evidence of miscounselling and a belief that it was reasonable for an individual to have relied on such information years after the effective date of the law, no reason exists to recommend relief.

E NOW
AVE TO
IVE THE
KNR SIMILAR
AVENUE
TO APPROVE
BOYER

3. Subsequently the applicant submitted as new evidence not previously seen by this Board a certificate from the previous Surgeon USMA and Chairman, Medical Program Advisory Committee that he specifically instructed the applicant (previously as a USMA Cadet) that regulations at the time directed that longevity credit for pay purposes would accrue for students during time spent in medical school.

4. Under these circumstances, in light of the new evidence submitted, it appears that the applicant was specifically mis-advised by the responsible counselors at the USMA concerning the granting of longevity credit for pay purposes during time spent in USUHS.

WHY CAN'T THE RESPONSIBLE COUNSELORS AT USUHS BE HELD SIMILARLY ACCOUNTABLE?

HE WAS ALSO BRIEFED BY USUHS REPRESENTATIVES

5. It is now clear that the applicant was ineffectively counseled concerning service credit he was to receive while attending USUHS at the time, and he was led to believe he would receive service credit for his service sponsored schooling and not withstanding the denial of his previous appeal, he is due the service credit he has requested based upon ineffective counseling resulting in an inequity and injustice.

6. In view of the foregoing findings and conclusions, it would be appropriate to correct the applicant's records as recommended below.

RECOMMENDATION:

1. That all of the Department of the Army records related to this case be corrected by showing that the applicant's official military personnel records be changed to reflect the social security number of 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 as corrected by the Social Security Administration.

2. That he was enrolled in the Uniformed Services University of the Health Services on 14 September 1981.

3. That he was awarded constructive service credit for basic pay purposes only while attending the Uniformed Services University of the Health Services at Bethesda Maryland from 15 August 1983 to 16 may 1987.

BOARD VOTE:

| | | | |
|---|---|---|---|
| [initials] | ELW | QP | GRANT AS STATED IN RECOMMENDATION |
| | | | GRANT FORMAL HEARING |
| | | | DENY APPLICATION |

[signature]

CHAIRPERSON

**APPLICATION FOR CORRECTION OF MILITARY RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552**
*(Please read instructions on reverse side BEFORE completing application.)*

*Form Approved OMB No. 0704-0003 Expires Mar 31, 1993*

Public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Washington Headquarters Services, Directorate for Information Operations and Reports, 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302, and to the Office of Management and Budget, Paperwork Reduction Project (0704-0003), Washington, DC 20503. Please DO NOT RETURN your form to either of these addresses. Send your completed form to the appropriate address shown on reverse.

*Privacy Act Statement*

JV SOWA

**AUTHORITY:** Title 10 US Code 1552, EO 9397.

**PRINCIPAL PURPOSE:** To initiate an application for correction of a military record. The form is used by Board members for review of pertinent information in making a determination of relief through correction of a military record.

**ROUTINE USE(S):** None.

**DISCLOSURE:** Voluntary; however, failure to provide identifying information may impede processing of this application. The request for Social Security number is strictly to assure proper identification of the individual and appropriate records.

1. APPLICANT DATA

a. BRANCH OF SERVICE (X one) [X] (1) ARMY [ ] (2) NAVY [ ] (3) AIR FORCE [ ] (4) MARINE CORPS [ ] (5) COAST GUARD

| b. NAME (Last, First, Middle Initial) (Please print) | c. PRESENT PAYGRADE | d. SERVICE NUMBER (If applicable) | e. SOCIAL SECURITY NUMBER |
|---|---|---|---|
| Ecklund, James, M. | O-4 | None | 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 ~~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~~ |

| 2. TYPE OF DISCHARGE (If by court-martial, state type of court.) | 3. PRESENT STATUS, IF ANY, WITH RESPECT TO THE ARMED SERVICES (Active duty, Retired, Reserve, etc.) | 4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY |
|---|---|---|
| N/A | Active Duty | N/A |

5. ORGANIZATION AT TIME OF ALLEGED ERROR IN RECORD: U.S. Army

6. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C. (No expense to the Government) (X one) If Asked [ ] a. YES [ ] b. NO

7. COUNSEL (If any)
a. NAME (Last, First, Middle Initial)
b. ADDRESS (Street, City, State and Zip Code)

8. I REQUEST THE FOLLOWING CORRECTION OF ERROR OR INJUSTICE: Re-institution of credit for time in service for pay purposes during my service as a 2nd LT attending USUHS from 1983-1987. This requires an administrative change in the date of entrance into USUHS to 14 SEP 1981.

9. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST IN THE FOLLOWING PARTICULARS:

There is a pay discrepancy between myself and at least 20 Air Force Officers.

10. IN SUPPORT OF THIS APPLICATION I SUBMIT AS EVIDENCE THE FOLLOWING: (If Veterans Administration records are pertinent to your case, give Regional Office location and Claim Number.)

Please see enclosed statement with attachments.

11. ALLEGED ERROR OR INJUSTICE DATA

a. DATE OF DISCOVERY: 24 FEB 1996

b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THIS APPLICATION.

12. APPLICANT MUST SIGN IN ITEM 16. IF THE RECORD IN QUESTION IS THAT OF A DECEASED OR INCOMPETENT PERSON, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY APPLICATION. IF APPLICATION IS SIGNED BY OTHER THAN APPLICANT, INDICATE RELATIONSHIP OR STATUS BY MARKING APPROPRIATE BOX.
[ ] a. SPOUSE [ ] b. WIDOW [ ] c. WIDOWER [ ] d. NEXT OF KIN [ ] e. LEGAL REP [ ] f. OTHER (Specify)

13. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM. (U.S. Code, Title 18, Sec. 287, 1001, provides a penalty of not more than $10,000 fine or not more than 5 years imprisonment or both.)

14. COMPLETE CURRENT ADDRESS, INCLUDING ZIP CODE (Applicant should forward notification of all changes of address.)
6425 Manor View Drive
1 ~~6316 E. Hialeah~~ Dr. Laytonsville MD.
~~Aurora, CO 80015~~ 20882

DOCUMENT NUMBER (Do not write in this space.) 96-10720A
AC 00054

15. DATE SIGNED: 19 APR 96

16. SIGNATURE (Applicant must sign here) [signature]
Walter Reed 202-782-9804

S: 25 Aug 98

SFMR-RBR - 1st End (17 Jun 98, Docket Number AC90-10720A)
SUBJECT: ABCMR Proceedings

HQDA, OASA, Arlington, Virginia 22202-4508 18 Jun 98

TO: Commander, US Total Army Personnel Command,
ATTN: TAPC-MSE-A, 200 Stovall Street,
Alexandria, Virginia 22332-0400

1. Under the authority of Title 10, United States Code, section 1552, the recommendation of the Army Board for Correction of Military Records is hereby approved, and it is directed that all of the Department of the Army records of the individual concerned be corrected as shown under Recommendation in the Proceedings of the Board in this case.

2. Request necessary administrative action be taken to effect the correction of records as indicated no later than 25 August 1998 Further, request that the individual concerned and counsel, if any, as well as any members of Congress who have shown interest be advised of the correction and that the Board for Correction of Military Records be furnished a copy of the correspondence.

BY ORDER OF THE SECRETARY OF THE ARMY:

Encls

Karl F. Schneider
Deputy Assistant Secretary
(Army Review Boards)

CF:
Applicant

( )DFAS
( )SFMR

7 April 1996

TO: US ARMY BOARD FOR CORRECTION OF MILITARY RECORDS

FROM: MAJ JAMES M. ECKLUND

SUBJECT: REQUEST FOR RECONSIDERATION OF DOCKET #AC90-10720

1. I respectfully request reconsideration of my prior application before the Board because of newly discovered evidence pertaining directly to this case. On 6 February, 1991, the Board denied my request seeking credit for basic and longevity pay purposes for time spent in medical school at the Uniformed Services University of the Health Sciences (USUHS). In late February 1996, through personal conversations and subsequent investigation, I became aware of numerous similar and nearly identical cases which have been ruled upon favorably by the Air Force Board of Correction for Military Records (AFBCMR) (Attachment 1). In the memorandum of consideration from my previous denial the Army Board concluded on page 4 "However, even if the applicant had been misled, the majority of the members of the class were properly informed of the change in the law and to correct his records on this basis and not correct the others would create an injustice to other members of the class." Furthermore, it is stated that "Cognizance is taken of the corrections made by the class of 1986 to ensure uniformity with the other services so as not to leave the Army students in a disadvantaged position" (Attachment 2). In light of this new evidence, I have suffered an injustice and have been placed in a disadvantaged position by virtue of my Army service. Additionally, a 1985 Memorandum from the Principle Deputy Assistant Secretary of Defense urges a consistent approach among the individual Boards for Correction (Attachment 3). I ask for reconsideration by the Board of Corrections to correct my records to reflect longevity pay credit for my four years as a 2nd LT in medical school at USUHS.

2. I am a 1983 graduate of the United States Military Academy at West Point. I was branched in the infantry and by virtue of my graduating rank (16th of 867) I was able to receive one of the most sought after initial assignments from the academy. By acceptance of the USUHS agreement, I effectively resigned my infantry branch choice and the opportunity for an assignment with our only airborne unit in Europe (Attachments 4 and 5). I made this choice with the understanding that I would receive longevity credit for my years at medical school, and thus remain on par with my academy peers. This understanding was fostered by the written materials provided by USUHS, and all verbal statements made to me by academy and USUHS personnel. This misunderstanding and misinformation was presented in detail to the Board on my initial request. Only after arrival to USUHS in the fall of 1983, was it clarified that the USUHS Medical School Bulletin was incorrect, and I would not receive longevity credit for my time as a 2nd LT. As a result of what we interpreted to be an obvious injustice, the majority of both our class (1987) and the class of 1986 filed petitions enbloc with all three Boards for Correction. The class of 1986 received relief, but we were denied.

3. Although I disagreed with the decision of the Board, I respected its authority and realized that its decisions were at least equitably applied to our entire class. The Air Force students from my class that have since been granted longevity credit, reapplied with a new statement from the officer in charge of pre-medical counselling at the Air Force Academy which confirmed the misguided impressions and counselling we all received. I have included a copy of the application packet to the AFBCMR and correction memorandum for MAJ Loretta O'Brien (Attachment 6). MAJ O'Brien was my classmate in the USUHS class of 1987, and attended the U. S. Air Force Academy (USAFA) during the same years I attended West Point. Her original application to the AFBCMR was denied as they were for our entire class. <u>The only new evidence in her successful second request is the documented evidence of miscounselling during her attendance at the Air Force Academy by LTC Cairney and MAJ Woods of the Health Professions Advisory Committee.</u> I have evidence of essentially identical miscounselling at West Point by COL (ret) Treanor who served as Chairman, Medical Program Advisory Committee (Attachment 7). This Military Academy Committee has the same cadet advisory and counselling responsibilities as the Health Professions Advisory Committee at the Air Force Academy.

4. MAJ August Pasquale is another USUHS classmate of mine who has been granted longevity credit by the AFBCMR. He also cites as evidence the miscounselling from LTC Cairney at USAFA. In their Record of Proceedings dated April 15, 1993 the Board concluded in paragraph 3 (page 6) " Since the officer having

00056

IS IT NOT A FORM OF INJU THAT THOSE ENTERING THE CLASS OF 198 FROM OTHER THAN WEST ! & THE AIR F ACADEMY D NOT HAVE A TO SUCH

SEEMS LIKE AN IMPORTANT CONCEPT

primary responsibility for briefing the cadets did not know about the change, it logically follows that the applicant was not informed of the significant change in the law effective with the 15 September 1981 implementation of the Defense Officer Management Personnel Act (DOPMA). They continue in paragraph 4, "...Because of the clear- cut evidence of miscounselling and having no evidence to the contrary, we feel obliged to accept the assertion of detrimental reliance on faulty or inaccurate information from an official source. Therefore, we believe that the applicant's records should be corrected as requested." (Attachment 8).

PRESENT USUHS OFFICIAL ALSO AN OFFICIAL SOURCE?

5. MAJ O'Brien and MAJ Pasquale went through the Air Force Academy during the same years I went through the Military Academy, received the same incorrect written materials from USUHS as I received, were provided a nearly identical academy pre-medical school counseling program as I, went through the same USUHS interview and briefing process as I, and were under the same impression as I, that longevity credit accumulated for medical school. They have since been granted the relief that I was denied. This glaring inconsistency cannot be construed as equitable.

SUPPORTS WHAT I HAVE SAID PREVIOUSLY THAT ALL OF THE USMA AND USAFA GRADS WERE ALSO BRIEFED BY USUHS PERSONNEL JUST AS THE REST OF WE WERE.

6. The precedent case cited by MAJ O'Brien and MAJ Pasquale is that of Martin Bomalowski AFBCMR 90-01747 (handled under AFBCMR 90-0222). Using this same precedent case, longevity credit for medical school has been granted to at least 18 other HPSP and USUHS graduates of both the class of 1987 and 1988. These are the students on attachment 1 who attended USAFA (See appendix in support of attachment 1). The letters by Dr. Bomalowski to the AFBCMR are included as attachment 9. I have not been able to acquire the Record of Proceedings from Dr. Bomalowski's case, but page 4 of the AFBCMR Record of Proceedings pertaining to August Pasquale outlines this precedent case (Attachment 8). Dr. Bomalowski graduated from the Air Force Academy in 1983 and went on to become a HPSP graduate in 1987. As a cadet he was counseled by LTC Cairney who was Chairman of the Health Professions Advisory Program at the Air Force Academy. The Board stated "...since it was reasonable for Dr. B. to have relied on the representations made by this official, he should be treated as those in the 1986 USUHS graduating class and be granted relief as a matter of equity. Further it is stated on page nine, paragraph seven, of the Record of Proceedings, AFBCMR 90-00222, that clear cut or presumptive evidence of miscounselling and reliance on that miscounselling after the date of the change in the law must be demonstrated in future cases if relief is to be recommended." COL (ret) Treanor's letter provides evidence that as a cadet I received essentially identical miscounselling as that given to these Air Force officers when they were cadets. I relied on this information when deciding to resign my infantry branch choice and accept a career in the medical corps through USUHS.

7. I am neither a private investigator nor a lawyer, and have done my best to obtain accurate and complete information without being distracted from my duties as an Army physician. The reliability and source of each name included on attachment 1 is explained at the bottom of the attachment and documented where appropriate in the appendix. The only substantial difference between my circumstance and the officers described above is that I serve in the Army, and my documented miscounselling occurred at the Military Academy instead of the Air Force Academy. I ask to not be penalized for my Army service, and to be treated on par with my Air Force colleagues. I love the Army and intend to continue for a career. I have served faithfully and with tireless energy, and intend to continue this course regardless of your decision. I would hope, however, that the Army will stand by me in this matter as I stand by it. Thank-you for your time and consideration.

Respectfully Submitted,

J M Ecklund

James M. Ecklund
MAJ MC
Fitzsimons Army Medical Center

UNIFORMED SERVICE UNIVERSITY OF THE HEALTH SCIENCE
F. EDWARD HÉBERT SCHOOL OF MEDICINE
4301 JONES BRIDGE ROAD
BETHESDA, MARYLAND 20814

18 April 1985

REGISTRAR

TEACHING HOSPITALS
WALTER REED ARMY MEDICAL CENTER
NAVAL HOSPITAL, BETHESDA
MALCOLM GROW AIR FORCE MEDICAL CENTER
WILFORD HALL AIR FORCE MEDICAL CENTER

MEMORANDUM FOR THE BOARD OF CORRECTIONS

SUBJECT: Pay and Retirement Benefits at the Uniformed Services University of the Health Sciences

Enclosed as Attachment 1 is a memorandum from Second Lieutenant Kevin A. Hall, USAF, MSC, President, Class of 1987, subject as above, dated 30 January 1985.

A Memorandum for the Record, subject: Medical School Creditable for Pay Purposes, dated 3 April 1984 (Attachment 2), addressed the issue for those students who matriculated to the Uniformed Services University of the Health Sciences (USUHS) in 1982 (anticipated graduation in 1986). Subsequent to that 1982 matriculating class and subsequent admission cycles (1983) thereafter, all interested matriculants who were interviewed for the Class of 1987 and subsequent classes, were verbally informed that the information contained in the USUHS Bulletin, 1983-1984 regarding "longevity credit for pay purposes occurs for students for time spent in school...and that...time spent as a medical student...is creditable for computing retired pay once retirement eligibility has been established," was in fact no longer true due to the recent DOPMA legislation.

It cannot be said that every interviewee was told the exact information on each interview day. On three occasions I did not personally give the briefing to the interviewees; two of the briefings were conducted on the west coast (which I did not attend) and one was given on the east coast, which I did not attend because I was out on the west coast. It is very possible that a given segment of the Class of 1987 could have, and probably did, receive inaccurate or incomplete information from any number of official/semi-official sources concerning the effects upon entitlements (pay purposes at the time of graduation and retirement) due to the DOPMA legislation. All this obviously has resulted in a confused and misinformed population.

THIS PROGRESSION OF LETTERS TO PROGRESSIVE WAFFLING SHOULD SPEAK FOR ITSELF.

PETER J. STAVISH, M.B.A.
LTC, MSC, USA (Ret)
Director of Admissions/Registrar

Attachments (2)

00058

EXHIBIT 22

8

alo
TRIC CENTER

Avenue
14213-1298
2261

George Molnar, M.D.
Executive Director

LUS -
WELLNESS CENTER
51

Avenue
N.Y. 14303

EVALUATION TEAM
14034

LUS - NORTH BUFFALO
Avenue
14216

LUS - DEL-NOR
eet
14203

CLINIC
51
2651

NIC
Avenue
14063

LUS - LANCASTER
d Road
Y. 14086

US - NORTH

reet
nda, N.Y. 14120

US - MILLER

4212
-1430

TRIC TEAM
68
2894

CLINIC
ville Road
N.Y. 14131

IS - ZOAR VALLEY
Road
1034

July 23, 1998

Army Board of Corrections of Military Records:

This is to certify that in 1982 the undersigned was acting as Surgeon, United States Military Academy (USMA), and Chairman, Medical Program Advisory Committee, and in that capacity instructed Cadets who were applying to medical school from the USMA class of 1983 regarding the rules and regulations governing the USUHS program for medical students.

Regulations at that time directed that longevity credit for pay purposes would accrue for students during time spent in medical school. Cadets from the USMA class of 1983 were so instructed by me and the other member of the Advisory Committee.

If I may be of further assistance in this matter, please communicate directly. My office phone number is (716) 885-2261, Ext. 2009 and my home phone number is (716) 884-6355. Fax: (716) 885-0710.

Certified:

John J. Treanor, M.D., MPH
Colonel, US Army (Ret.)
Medical Director

ALL HE DID WAS TO QUOTE THE INFORMATION CONTAINED IN THE USUHS CATALOG TO THE USMA CADETS. THIS CATALOG WAS WRONG AND THE SAME ONE USED BY THE ENTIRE CLASS TO OBTAIN INFORMATION ABOUT USUHS.

00060

9

UNIFORMED SERVICES UNIVERSITY
OF THE
HEALTH SCIENCES
SCHOOL OF MEDICINE
4301 JONES BRIDGE ROAD
BETHESDA, MARYLAND 20814

ACADEMIC
SUPPORT/ADMISSIONS

29 March 1983

TEACHING HOSPITALS
WALTER REED ARMY MEDICAL CENTER
NATIONAL NAVAL MEDICAL CENTER
MALCOLM GROW AIR FORCE MEDICAL CENTER
WILFORD HALL AIR FORCE MEDICAL CENTER

John D. Boyer
830 Balboa Avenue
Coronado, CA 92118

Dear Mr. Boyer:

I am delighted to inform you that you have been designated an unconditional acceptee for entrance to the School of Medicine. Your change in status from a conditional to an unconditional acceptee is the result of favorable action by the United States Navy on your nomination for appointment in that component.

The military department in which you are to be commissioned will be contacting you shortly to arrange for your assignment to the School as a Medical Officer Candidate. If any problems are encountered, or if a few weeks elapse without a word from your military department, please advise our Military Personnel Office (telephone: 301-295-3086). Every effort is being made to expedite your commissioning and issuance of orders. Please cooperate in this effort by promptly filling out and returning all documents requested by your service. It is in your best interest to accomplish this by return mail.

Now that your matriculation to the School is definite, I am referring your name to the Office of the Assistant Dean for Student Affairs, (telephone: 301-295-3185) which is responsbile for coordinating all matters incidental to the inprocessing of students. This office will be in touch with you to advise you of registration procedures and requirements, and also to render any assistance you might require in relocating to the School.

Since this letter constitutes a firm commitment on the School's part to place you in this year's class, I would ask that you take immediate action to withdraw from any other school in which you are currently holding a space, so as to allow that institution to offer the place to another applicant. You are, of course, free to keep open any applications you have pending so long as you do not hold spaces in two or more schools simultaneously.

THIS EFFECTIVELY CLOSED OUT OTHER MEDICAL SCHOOL OPTIONS

THE DECISION WAS MADE ON THE BASIS OF THE INFORMATION RECEIVED 00062

[illegible] USUHS OFFICIALS AND THE INFORMATION IN

The fact that you have been unconditionally accepted for entrance to the School of Medicine should make you a very proud person, and justifiably so because the competition for admission is extremely keen. I compliment you on your accomplishment and wish you the very best in the academic years ahead and in your military career.

If I can ever be of any assistance to you, please feel free to contact me.

Sincerely,

PETER J. STAVISH, M.B.A.
LTC, MSC, USA (RET)
Director of Admissions
Registrar

cc: Assistant Dean
for Student Affairs

Military Personnel
1SG Joynes, USA

10

00064

UNIFORMED SERVICE UNIVERSITY OF THE HEALTH SCIENCE
F. EDWARD HÉBERT SCHOOL OF MEDICINE
4301 JONES BRIDGE ROAD
BETHESDA, MARYLAND 20814

REGISTRAR

12 February 1985

TEACHING HOSPITALS
WALTER REED ARMY MEDICAL CENTER
NAVAL HOSPITAL, BETHESDA
MALCOLM GROW AIR FORCE MEDICAL CENTER
WILFORD HALL AIR FORCE MEDICAL CENTER

MEMORANDUM FOR THE BOARD OF CORRECTIONS

SUBJECT: Pay and Retirement Benefits at the Uniformed Services University of the Health Sciences

Enclosed as Attachment 1 is Second Lieutenant Kevin A. Hall, USAFR, MSC, President, Class of 1987, subject as above, dated 30 January 1985.

A Memorandum for the Record, subject: Medical School Creditable for Pay Purposes, dated 3 April 1984 (Attachment 2), addressed the issue for those students who matriculated to the Uniformed Services University of the Health Sciences (USUHS) in 1982 (anticipated graduation in 1986). Subsequent to that 1982 matriculating class and subsequent admission cycles (1983) thereafter, all interested matriculants who were interviewed for the Class of 1987 and subsequent classes, were verbally informed that the information contained in the USUHS Bulletin, 1983-1984 regarding "longevity credit for pay purposes occurs for students for time spent in school...and that...time spent as a medical student...is creditable for computing retired pay once retirement eligibility has been established", was in fact no longer true due to the recent DOPMA legislation.

It cannot be said that all persons who were interviewed understood or paid attention to what was being said; however, the Office of Admissions went to extreme length to verbally inform all interviewees of the new legislation.

THIS IS DEBATABLE

PETER J. STAVISH, M.B.A.
LTC, MSC, USA (Ret)
Director of Admissions/Registrar

Attachments (2)

00065

EXHIBIT 19