UNIFORMED SERVICE UNIVERSITY OF THE HEALTH SCIENCE
F. EDWARD HÉBERT SCHOOL OF MEDICINE
4301 JONES BRIDGE ROAD
BETHESDA, MARYLAND 20814

TEACHING HOSPITALS
WALTER REED ARMY MEDICAL CENTER
NAVAL HOSPITAL, BETHESDA
MALCOLM GROW AIR FORCE MEDICAL CENTER
WILFORD HALL AIR FORCE MEDICAL CENTER

REGISTRAR

12 February 1985

MEMORANDUM FOR THE BOARD OF CORRECTIONS

SUBJECT: Pay and Retirement Benefits at the Uniformed Services University of the Health Sciences

Enclosed as Attachment 1 is Second Lieutenant Kevin A. Hall, USAFR, MSC, President, Class of 1987, subject as above, dated 30 January 1985.

A Memorandum for the Record, subject: Medical School Creditable for Pay Purposes, dated 3 April 1984 (Attachment 2), addressed the issue for those students who matriculated to the Uniformed Services University of the Health Sciences (USUHS) in 1982 (anticipated graduation in 1986). Subsequent to that 1982 matriculating class and subsequent admission cycles (1983) thereafter, all interested matriculants who were interviewed for the Class of 1987 and subsequent classes, were verbally informed that the information contained in the USUHS Bulletin, 1983-1984 regarding "longevity credit for pay purposes occurs for students for time spent in school...and that...time spent as a medical student...is creditable for computing retired pay once retirement eligibility has been established", was in fact no longer true due to the recent DOPMA legislation.

It cannot be said that every interviewee was told the exact information on each interview day. On three occasions I did not personally give the briefing to the interviewees; two of the briefings were conducted on the west coast (which I did not attend) and one was given on the east coast, which I did not attend because I was out on the west coast. Therefore, it is possible that a handful of applicants did not get the word about the new legislation.

↓ TO INCLUDE ALL OF THE USMA AND USAFA GRADS? THAT IS 15% OF THE CLASS RIGHT THERE

PETER J. STAVISH, M.B.A.
LTC, MSC, USA (Ret)
Director of Admissions/Registrar

Attachments (2)

//

12

AFFIDAVIT OF EDWARD WILLIAM CHEESEMAN, JR.

STATE OF Maryland )
) SS:
COUNTY OF Montgomery )

I, EDWARD WILLIAM CHEESEMAN, JR., do hereby depose and say:

1. I matriculated at the Uniformed Services University of the Health Sciences (USUHS) in August 1983 and was graduated in May 1987 as a member of the Class of 1987.

2. In January 1981, I attended a briefing session at USUHS with approximately 40 other prospective medical students. The group briefing was conducted by Mr. Peter J. Stavish, then the acting Registrar of USUHS, who subsequently became the USUHS Director of Admissions and Registrar. The purpose of the group briefing was to inform prospective medical students about USUHS and the nature of a military career.

3. Mr. Stavish did not brief us regarding the DOPMA impact upon basic pay -- his briefing was completely silent on this matter. Specifically, Mr. Stavish did not advise us that the four years spent at USUHS would no longer be included in computing basic pay. Similarly, Mr. Stavish did not brief us regarding the DOPMA impact upon retired pay.

4. I was not accepted into the USUHS Class of 1986, and applied for admission to the Class of 1987.

5. On November 18, 1982, I attended a briefing session at USUHS with approximately 40 other prospective medical students, this time for the Class of 1987. The group briefing was again

conducted by Mr. Stavish. As was the case with the Class of 1986, Mr. Stavish did not brief us with respect to the effect of DOPMA on basic pay -- i.e., Mr. Stavish did not advise us that DOPMA prohibited the inclusion of the four years spent at USUHS in the computation of basic pay. Mr. Stavish's briefing to prospective members of the Class of 1987 regarding the effect of DOPMA on basic pay was precisely the same as his briefing to prospective members of the Class of 1986 -- viz., it was completely silent on this issue.

6. With respect to the effect of DOPMA on retired pay, Mr. Stavish advised us (on November 18, 1982) that the four USUHS years would not be included in the computation of retired pay. Mr. Stavish further stated that this item may be "changing", "was in flux" and was "being addressed".

7. Because of the AMCAS rules, upon receiving my unconditional acceptance to USUHS in February 1982, I withdrew my other unconditional acceptances. Additionally, I withdrew my applications from other medical schools I had applied to, before action was taken on these applications.

8. In 1981 and 1982, when I was applying to medical schools, including USUHS, I lived near Dayton, Ohio. I owned a home near Dayton, with an 8.5% mortgage interest rate, and my monthly house payment for principal, interest, taxes and insurance was $425. (My monthly rent while at USUHS averaged $700.) I could have stayed in the Dayton area and conveniently commuted to

Wright State University Medical School. The tuition at that time for Wright State University Medical School was approximately $3,800 annually, and the cost of living near Dayton was significantly less than the Washington, D.C. metropolitan area. Had I decided to attend Wright State University Medical School, I would have received benefits under the "G.I. Bill" while staying in the Reserves. Further, I would have explored the availability of other, additional scholarship assistance.

9. The 1983-1984 USUHS Bulletin states on page 45 that "longevity credit for pay purposes accrues for students for time spent in school." Based upon this representation in the catalogue, and not having been advised to the contrary by anyone, including Mr. Stavish, I decided to enroll in USUHS in the Class of 1987. I fully expected that my time at USUHS would count for basic pay purposes. My commitment to matriculate at USUHS was based upon the information provided by USUHS, specifically that contained in the catalogue and the briefings described above.

10. When I enrolled in USUHS in the fall of 1983, I had over eight years of prior military service as a Naval Officer. Since I expected a significant pay reduction while attending USUHS and am married with two children, I was very sensitive to issues regarding pay, and listened very intently to the two briefings by Mr. Stavish. Because of my prior military service, I was attuned to, and would have understood, information regarding the computation of basic pay.

11. My acceptance at USUHS brought my career as a naval aviator to a halt. My career status was terminated, and I was unable to accept an aviation incentive bonus of at least $20,000 (since it would have required an additional four-year commitment to line duty as an aviator). My loss of earnings from reversion back to 0-1 as a USUHS student, from my prior rank of 0-4, represents approximately $96,000 over the four years of medical school.[1] While I freely made this decision, I made it on the premise that my four years at USUHS would count toward my basic pay.

12. I did not learn that DOPMA prohibited the inclusion of my four USUHS years in the computation of basic pay until after my matriculation at USUHS.

I declare under penalty of perjury that the foregoing is true and correct.

Edward William Cheeseman Jr.
EDWARD WILLIAM CHEESEMAN, JR.
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

[1] This figure is composed of the following: (1) $48,000 -- difference in base pay; (2) $20,000 -- aviation career incentive pay of at least $5,000 annually; (3) $19,200 -- flight pay of $400 per month; and (4) $9,000 -- difference in BAQ for an 0-1 and 0-4.



00072

State of MARYLAND

County of MONTGOMERY, to wit:

I, Janet Athos, a Notary Public in and for the State and County aforesaid, hereby certify that EDWARD WILLIAM CHEESEMAN, JR who is/are known to me to be or has/have satisfactorily proven to me to be the person(s) who executed the foregoing affidavit, personally appeared before me in the State and County aforesaid and acknowledged the same to be his or her act and deed.

Given under my hand and seal this 8 day of SEPTEMBER, 1989.

Notary Public

My commission expires: July 1, 1990

00073

# AFFIDAVIT OF JAMES DONALD BRIDGES

STATE OF Maryland )
 ) SS:
COUNTY OF Montgomery )

I, JAMES DONALD BRIDGES, do hereby depose and say:

1. I matriculated at the Uniformed Services University of the Health Sciences (USUHS) in August 1983 and was graduated in May 1987 as a member of the Class of 1987.

2. In December 1981, while serving as Chief Engineer officer on the USS Daniel Boone SSBN629 (Blue), I initiated my first contact with USUHS. At that time I was a LCDR with a wife and one child, and the financial impact of attending USUHS was of critical importance to me. Accordingly, when I called the Registrar's office I specifically asked what impact attendance at USUHS would have on my pay and rank. The Registrar's office referred me to the 1982-1983 USUHS Bulletin, which I received one week later. The 1982-1983 Bulletin stated on page 45 that "longevity credit for pay purposes accrues for students for time spent in school," and that "time spent as a medical student . . . is creditable for computing retired pay once retirement eligibility has been established."

3. In January 1982, during my physical exam required for application to USUHS, I discussed these issues with the Submarine Squadron Four medical officer -- a 1975 graduate of the Naval Academy who went directly to medical school after the Academy. He confirmed that he had received full credit for his time in medical school for longevity pay, retired pay and promotion eligibility.

4. In the summer of 1982, I received the formal application package from USUHS which contained the 1983-1984 Bulletin. The language of the 1983-1984 Bulletin (on page 45) was identical to the 1982-1983 Bulletin, viz., that time spent at USUHS was creditable for both longevity and retired pay.

5. On December 9, 1982, I attended a briefing session at USUHS with approximately 40 other prospective medical students. The group briefing was conducted by Ms. Joan F. Crotty, an assistant to Mr. Peter J. Stavish, the acting Registrar of USUHS who subsequently became the USUHS Director of Admissions and Registrar. The purpose of the group briefing was to inform prospective medical students about USUHS and the nature of a military career.

6. Ms. Crotty did not brief us regarding the DOPMA impact upon basic pay -- her briefing was completely silent on this matter. Specifically, Ms. Crotty did not advise us that the four years spent at USUHS would no longer be included in computing basic pay.

7. At the same time, Ms. Crotty did advise us that the four USUHS years would not be included in the computation of retired pay, and that the statement to the contrary in the 1983-1984 Bulletin was erroneous.

8. In addition to the briefing by Ms. Crotty, I received two interviews on December 9, 1982, by active duty military physicians. Neither of these physicians stated there was any change in the policy stated in the 1982-1983 and the 1983-1984 Bulletins that the four USUHS years would count for basic pay.

9. Approximately 10 days later (December 19, 1982), I returned to USUHS for two additional interviews by members of the Selection Committee. One interview was conducted by a civilian faculty member, and the second by an active duty 0-6 physician. Again, as in the prior two interviews, no reference was made to any change in the policy stated in the 1982-1983 and 1983-1984 Bulletins (which I had previously received) regarding longevity credit for the four USUHS years.

10. In 1982 and 1983, when I was applying to medical schools, including USUHS, I lived in Charleston, South Carolina. I owned a home in Charleston, with an 8.5% mortgage interest rate, and my monthly house payment for principal, interest, taxes and insurance was $375. (My monthly rent while at USUHS averaged $700.) I could have stayed in the Charleston area and conveniently commuted to the Medical University of South Carolina (one of the medical schools to which I was accepted), which was six miles from my home. The tuition at that time for the Medical University of South Carolina was approximately $4,000 annually, and the cost of living in Charleston was significantly less than the Washington, D.C. metropolitan area. Had I decided to attend

00076

the Medical University of South Carolina, I would have received benefits under the Vietnam era "G.I. Bill" while staying in the Reserves. Further, my wife had an excellent job at that time, and was earning approximately $18,000.00 per year. Moreover, I would have explored the availability of other, additional scholarship assistance.[1/]

11. When I was accepted by the Medical University of South Carolina, I submitted a letter of resignation to the Navy. I was subsequently accepted by USUHS. In deciding whether to attend the Medical University of South Carolina or USUHS, I made a detailed financial analysis comparing the expenses associated with attendance at both schools. This calculation included the assumption that my time at USUHS would count for basic pay purposes. Based upon this analysis, I decided to attend USUHS.

12. Because of the AMCAS rules, upon receiving my unconditional acceptance to USUHS in May 1983, I withdrew my other unconditional acceptances.

13. The attached statement from Lt. Commander Paul K. Landers (the Submarine Department Head Detailer who detailed me from duty at the nuclear power school, Orlando, Florida to USUHS) reflects that I was advised, on several occasions, that the four years at USUHS would count towards determining longevity for pay

---

1/ I graduated first in my USUHS class, and based upon my academic record at the Naval Academy, my graduate degree in physical chemistry, and my scores on the Medical College Admission Test, I believe I would have been most competitive for scholarship assistance.

purposes. Lt. Commander Landers' statement reflects that he contacted Ensign Wetstone (Medical Assignment/Placement Branch) and confirmed that the four USUHS years would count in determining longevity for pay purposes.

14. The 1982-1983 and 1983-1984 USUHS Bulletins (which I received during the application process) both state on page 45 that "longevity credit for pay purposes accrues for students for time spent in school." Based upon this representation in the catalogue, and not having been advised to the contrary by anyone, including Ms. Crotty (and four Selection Committee interviewers, three of whom were senior active duty military physicians), I decided to enroll in the USUHS Class of 1987. I fully expected that my time at USUHS would count for basic pay purposes. My commitment to matriculate at USUHS was based upon the information provided by USUHS, specifically, that contained in the Bulletin and the briefing described above.

15. When I enrolled in USUHS in the fall of 1983, I had over ten years of prior military service as a Naval Officer. Since I expected a significant pay reduction while attending USUHS and was married with one child, I was very sensitive to issues regarding pay, and listened very intently to the briefing by Ms. Crotty. Because of my prior military service, I was attuned to, and would have understood, information regarding the computation of basic pay.

00078

16. My acceptance at USUHS brought my career as a nuclear submarine officer to a halt. My career status was terminated, my submarine pay stopped, and I was no longer able to accept a nuclear incentive bonus of $6,000 annually. My loss of earnings from reversion back to 0-1 as a USUHS student, from my prior rank of 0-4, represents approximately $110,000 over the four years of medical school.[2/] While I freely made this decision, I made it on the premise that my four years at USUHS would count toward my basic pay.

17. I did not learn that DOPMA prohibited the inclusion of my four USUHS years in the computation of basic pay until after my matriculation at USUHS.

I declare under penalty of perjury that the foregoing is true and correct.

James D. Bridges
JAMES DONALD BRIDGES
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

---

2/ This figure is composed of the following: (1) $51,000 -- difference in base pay; (2) $24,000 -- nuclear incentive bonus of $6,000 annually; (3) $21,120 -- monthly submarine pay of $440; $5,000 -- sea pay of $180 per month, beginning in early 1985; and (4) $9,000 -- difference in BAQ for an 0-1 and 0-4.

00079

State of Maryland
County of Montgomery, to wit:

I, Donna M. Batchelor, a Notary Public in and for the State and County aforesaid, hereby certify that James Donald Bridges who is/are known to me to be or has/have satisfactorily proven to me to be the person(s) who executed the foregoing affidavit, personally appeared before me in the State and County aforesaid and acknowledged the same to be his or her act and deed.

Given under my hand and seal this 23 RD day of September, 1989.

Notary Public

My commission expires: July 01,1990

13

UNIFORMED SERVICES UNIVERSITY OF THE HEALTH SCIENCES
F. EDWARD HE'BERT SCHOOL OF MEDICINE
4301 JONES BRIDGE ROAD
BETHESDA, MARYLAND 20814

FFICE OF THE PRESIDENT

TEACHING HOSPITALS
WALTER REED ARMY MEDICAL CENTER
NAVAL HOSPITAL, BETHESDA
MALCOLM GROW AIR FORCE MEDICAL CENTER
WILFORD HALL AIR FORCE MEDICAL CENTER

December 26, 1985

MEMORANDUM FOR AIR FORCE BOARD FOR CORRECTION OF MILITARY RECORDS

SUBJECT: Defense Officers Personnel Management Act (DOPMA) and Members of the Uniformed Services University of the Health Sciences Class of 1987

1. I am aware that under DOPMA individuals enrolled at USUHS after September 14, 1981 would not receive credit for the four years spent at USUHS in computing years of service creditable for basic pay. I am also aware that an apparent misunderstanding regarding this service credit has resulted in a number of petitions for records correction to be filed by members of the Class of 1987 of the F. Edward Hebert School of Medicine.

2. The text for the Uniformed Services University School of Medicine Bulletin 1983-1984 was written in December 1982 and failed to include the revisions of DOPMA, attachment 1. At the time of interviews for the Class of 1987 (December 1982-March 1983), this information was to be included in a broad one-hour briefing on the application process, the academic program and careers in military medicine, attachment 2 (an outline of the briefing).

3. After review of the specific application process, it is apparent that some members of the Class of 1987 did not receive the information regarding the changes in computing years of service creditable for basic pay and retired pay. The evidence for this is based upon the following:

a. It is true the material explaining DOPMA was included in the briefing given by the Director of Admissions. However, there were sets of interviews during which he did not do the briefing and others in which he was called out. It is important to recall that interview days are held multiple times in the fall and winter and at multiple locations in the United States. When the Director of Admissions was not available, the alternate briefer did not include this material, but rather did a standard briefing without reference to the DOPMA changes in military personnel regulations.

b. During the typical Admissions interview day, each applicant was interviewed separately by two active duty medical officers. However, the interviewers were not specifically requested to clarify DOPMA during the interview, and it is equally likely that the interviewers incorrectly briefed the applicants on the service credits because the interviewers were not affected by the DOPMA changes in longevity credit for time spent in medical school. Here again, it is important to note that a great number of active duty medical officers serve as interviewers, and that these individuals perform this function on an infrequent basis.

c. Applicants often met with currently enrolled students while visiting our campus; however, these students also were not specifically requested to clarify DOPMA and it was not an issue with them since Section 625 preserved credit for them.

d. The contracts entered into between the matriculant and the specific service, prepared by the respective services and not the University, did not clarify years of service creditable for basic and retired pay.

4. It is then apparent that through no fault of their own, some members of the Class of 1987 relied upon incorrect information given in good faith, and matriculated under a misconception regarding creditable service.

5. In the fall of 1983, having recognized the error in the 1983-1984 Bulletin, the University revised the 1984-1985 Bulletin, attachment 3. The impact of DOPMA was specifically stressed in the interview briefings, attachment 4. A letter was sent to each prior service matriculant of the Class of 1988 in June 1984 prior to matriculation, attachment 5. In 1985 such a letter was sent to each matriculant at the time of initial conditional acceptance. Lack of information or misinformation regarding DOPMA will not be an issue for the Class of 1988 and on, since the material has been incorporated in the current Bulletins, is briefed and covered in the conditional acceptance letter.

6. Based upon my review and analysis, a percentage of members of the Class of 1987 were either not or were inaccurately informed of the impact of the DOPMA on basic pay and retirement pay. I recommend that the Board consider en bloc correction of this error as it did for the Class of 1986. The circumstances presented with these petitions, i.e., incorrect information in the Bulletin, briefings where the issue was not clarified, and interviews with active duty medical officers where the error may have been compounded, are all substantially similar to the facts presented by the Class of 1986 petitions. If not en bloc, then individual evaluation as to whether or not the information was briefed would seem the fair alternative, although more difficult.

Jay P. Sanford, M.D.
President/Dean

14

UNIFORMED SERVICES UNIVERSITY OF THE HEALTH SCIENCES
F. EDWARD HÉBERT SCHOOL OF MEDICINE
4301 JONES BRIDGE ROAD
BETHESDA, MARYLAND 20814-4799

OFFICE OF THE DEAN

December 5, 1986

TEACHING HOSPITALS
WALTER REED ARMY MEDICAL CENTER
NAVAL HOSPITAL, BETHESDA
MALCOLM GROW AIR FORCE MEDICAL CENTER
WILFORD HALL AIR FORCE MEDICAL CENTER

MEMORANDUM FOR BOARD OF CORRECTION OF NAVAL RECORDS

SUBJECT: Defense Officers Personnel Management Act (DOPMA) and Members of the Uniformed Services University of the Health Sciences Class of 1987

1. On 26 December 1985 I submitted to you a memorandum on this same subject, Enclosures 1-6.

2. In the interim, it is my understanding that neither en bloc action nor review of individual petitions has been undertaken. Based upon this, I am again writing to clarify the circumstances surrounding these petitions for correction. In the interim I have further attempted to satisfy myself as to the point of whether or not there is reason to believe that this material was always briefed to the applicants. From meetings with members of the Class of 1987 who would have had specific reason to listen carefully for material re DOPMA, i.e., those with prior line service, I am now convinced that even at some of the briefings presented by the Director of Admissions that specific details regarding service creditable for basic pay were not included or that a change in this aspect of DOPMA was implied.

3. Based upon these further considerations, I again conclude that a proportion of members of the Class of 1987 were either not or were inaccurately informed of the impact of the DOPMA on basic pay and retirement pay. I again recommend that the Board consider correction of this error as it did for the Class of 1986. The circumstances presented with these petitions, i.e., incorrect information in the Bulletin, briefings when the issue was not clarified and interviews with active duty medical officers where the issue may have been confounded, are substantially similar to the facts presented by the Class of 1986 petitions. I would urge that each petition be considered specifically as to whether the individual petitioner states he/she was either not informed or misinformed. As Naval officers, I would accept their specific statements. If you have questions or desire additional clarification or information, please contact me.

Jay P. Sanford, M.D.
President/Dean

Encl 6

00085

EXHIBIT 23

15

UNIFORMED SERVICES UNIVERSITY OF THE HEALTH SCIENCES
F. EDWARD HÉBERT SCHOOL OF MEDICINE
4301 JONES BRIDGE ROAD
BETHESDA, MARYLAND 20814-4799

September 29, 1998

GENERAL COUNSEL

TEACHING HOSPI
WALTER REED ARMY MEDICAL CEI
NAVAL HOSPITAL, BETHI
MALCOLM GROW AIR FORCE MEDICAL CEI
WILFORD HALL AIR FORCE MEDICAL CEI

Mr. John Casciotti
Office of the Secretary of Defense
1000 Defense Pentagon
Washington, D.C. 20301-1000

Dear Mr. Casciotti,

In response to your inquiry dated 16 Sep 98 the Uniformed Services University of the Health Sciences (USUHS) provides the enclosed requested documents. Also included are some important factual matters for your consideration, as well as some thoughts on an appropriate future course of action. This represents the official position of the University on the issue of Constructive Service Credit (CSC) for the USUHS Class of 1987. At the conclusion of an internal review, we have identified two separate matters for deliberation; Equity and Miscounseling.

Turning to the issue of equity. As you may be aware the Air Force Board for the Correction of the Military Record (AFBCMR) and the Army Board for the Correction of the Military Record (ABCMR) have already granted CSC to 5 Air Force and 1 Army member from the USUHS 1987 Class. These 5 Air Force Students graduated from the Air Force Academy (USAFA) and the 1 Army student graduated from the Military Academy (USMA). It is anticipated that 12 additional USMA graduates in the USUHS Class of 1987 will be granted CSC in the near future as their cases are identical to the previously cited USMA officer's case. I also understand that a number of Air Force Health Professions Scholarship Program (AFHPSP) source officers have also been awarded CSC by the AFBCMR. Within the USUHS Class of 1987 some 18 officers will enjoy CSC credits pursuant to BCMR action. As with their classmates, these 18 officers were briefed by USUHS personnel during the admissions process. This establishes an inequity within the Class regarding CSC and gives the impression of preferential treatment by the BCMR's to a select group of Academy graduates. Segregation by CSC within the same class is not consistent with the USUHS mission to train future medical leadership that will sustain our medical forces for the next major conflict. In addition, in review of the BCMR's decisions to offer en bloc CSC credit to the USUHS 1986 Class, we observed that equity was a major sustaining factor. We found that after the Air Force BCMR approved their 1986 students, the Army and Navy BCMR's were obliged to follow in the interest of equity, justice, morale and retention (Attachment 1). The BCMR's actions again place us at this equity crossroads.

Regarding miscounseling of the USUHS Class of 1987, it appears that the information available in the public domain, as well as the admissions interview information with regard to DOPMA

credits were not correct. The information contained in the USUHS bulletin and obtained during the admissions interview incorrectly led interviewees to conclude that they would get pre-DOPMA benefits. Our own interviewers used the information contained in the bulletin as the basis for counseling applicants (Attachment 2). Furthermore, during this era there was not a clear understanding of the ramifications of the DOPMA legislation. Even the BCMR's have indirectly affirmed this by awarding CSC to Academy students who, even with the counseling of military premedical advisors and USUHS admissions personnel, were not clear on the career impact of the change in law.

The Dean of the University at the time, Dr. Jay Sanford, wrote two letters describing his belief that there was credible evidence of both written and verbal miscounseling of the 1987 Class (Attachment 3). The former students and now senior field grade officers who comprise this class have unsuccessfully attempted to correct this situation for a number of years. I am satisfied that their efforts are honorable and based on principle, not self-promotion. I also believe that as these officers move up the medical corps chain, any divisions in rank, experience and pay as a result of CSC will have a significant negative impact on morale and retention, an issue raised by both this University and the BCMR's in the past.

Although the University acknowledges responsibility for unintentional miscounseling, in fairness, we note with respect that the respective BCMR's have created the present inequity, as they did with the USUHS Class of 1986. In the view of the University, therefore, any satisfactory resolution properly rests with the BCMR's. We offer a clear dividing line. Students in the USUHS Class of 1988 and thereafter were sent documentation specifically informing them that they would no longer be eligible for pre-DOPMA benefits, as was noted in Dr. Sanford's letters. This creates a significant division between the USUHS 1987 Class and future classes.

It would seem both reasonable and prudent for the Undersecretary's office to support CSC for members of the USUHS Class of 1987. This action was recommended by Dr. Sanford some years ago and is our present recommendation. Further recalcitrance will not serve the best interests of DoD and our fighting force. Without attention, the long-term effects of this issue on morale, retention and future recruitment will be significant. In addition, there appears to be a growing bipartisan support for reintroduction of HR 2567 in the House with a companion bill in the Senate. Your personal meeting with members and their staff on this issue further demonstrates the commitment from Congress to obtain final closure of CSC for the 1987 Class. Therefore, we recommend CSC for the USUHS 1987 Class.

Sincerely,

Charles R. Mannix
General Counsel

Attachments

16

# S.1059

National Defense Authorization Act for Fiscal Year 2000 (Placed on the Calendar in the Senate)

/ul>

## SEC. 606. EQUITABLE TREATMENT OF CLASS OF 1987 OF THE UNIFORMED SERVICES UNIVERSITY OF THE HEALTH SCIENCES.

(a) YEARS OF SERVICE CREDIT- An officer of the uniformed services who entered the Uniformed Services University of the Health Sciences as a student in 1983 and who successfully completed the course of instruction at the University in 1987 shall be treated for purposes of determining pay and years of service in the same manner as a student at the University who graduated in 1986, notwithstanding the enactment of the Defense Officer Personnel Management Act (Public Law 96-513; 94 Stat. 2835).

(b) PROSPECTIVE APPLICABILITY- This section shall take effect on October 1, 1999. No entitlement to increased pay or allowances accrues for periods before such date, and no eligibility accrues for consideration for selection for promotions by boards convened before such date.

THIS WAS A PRIVATE BILL THAT THE BCMR WAS CREATED TO TRY TO AVOID. IT WAS ATTEMPTED DUE TO THE LACK OF ACTION BY THE BCMR.

853 2951481 P.02

ERNEST F. HOLLINGS
SOUTH CAROLINA

OFFICES:

1835 ASSEMBLY STREET
COLUMBIA, SC 29201
803-765-5731

103 FEDERAL BUILDING
SPARTANBURG, SC 29301
864-585-3702

126 FEDERAL BUILDING
GREENVILLE, SC 29603
864-233-5366

112 CUSTOM HOUSE
200 EAST BAY STREET
CHARLESTON, SC 29401
843-727-4525

# United States Senate

125 RUSSELL OFFICE BUILDING
WASHINGTON, DC 20510-4002
202-224-6121
EMAIL: http//www.senate.gov/~hollings

COMMITTEES:
COMMERCE, SCIENCE, AND TRANSPORTATION: RAN
APPROPRIATIONS
COMMERCE, JUSTICE, STAT THE JUDICIARY: RANKING
DEFENSE
LABOR, HEALTH AND HUMA EDUCATION
ENERGY AND WATER DEVE
INTERIOR
BUDGET
DEMOCRATIC POLICY COMM

October 16, 1998

Honorable Rudy DeLeon
Undersecretary For Personnel and Readiness
Office of the Secretary of Defense
1000 Defense Pentagon 3E764
Washington, DC 20301-1000

Dear Mr. Undersecretary:

Several of my military constituents have raised serious concerns ab how the Department of Defense and the Boards for the Correction of the Military Record (BCMR) have handled the inequity between members of the Uniformed Services University of the Health Sciences (USUHS) Class of 19 with regard to pre-DOPMA service credits.

It is my understanding, and I believe you are also aware, that the BCMRs have awarded pre-DOPMA constructive service credits to some member of this class while others have not been afforded such credits. Having reviewed the facts in these cases, I am inclined to agree with the posit of my constituents.

The Chairman of the Joint Chiefs of Staff has testified before the Senate Armed Services Committee that our armed forces are facing a readiness "nose dive." Persistent pay and promotion inequities that hav not been addressed by senior DoD management raises serious questions abo any commitment to readiness. I believe that satisfactory resolution of this issue is critical to the retention of these vital uniformed medical personnel.

I have enclosed a recent copy of correspondence between the USUHS General Counsel, Mr. Charles Mannix, and Mr. John Casciotti in the Offic of the Secretary of Defense stating the University's official position o this matter. I would concur with Mr. Mannix that all members of the affected USUHS class be treated equally and awarded pre-DOPMA credits.

I will continue to monitor this issue closely and trust you will of it your highest priority.

Sincerely,

Fritz Hollings

Ernest F. Hollings

EFH/sw
Enclosure

00092

PRINTED ON RECYCLED PAPER

18

UNDER SECRETARY OF DEFENSE
4000 DEFENSE PENTAGON
WASHINGTON, D.C. 20301-4000

Rm 3E764

APR 13 1999

PERSONNEL AND
READINESS

MEMORANDUM FOR ASSISTANT SECRETARY OF THE ARMY (MANPOWER AND RESERVE AFFAIRS)
ASSISTANT SECRETARY OF THE NAVY (MANPOWER AND RESERVE AFFAIRS)
ASSISTANT SECRETARY OF THE AIR FORCE (MANPOWER, RESERVE AFFAIRS, INSTALLATIONS AND ENVIRONMENT)

SUBJECT: Constructive Credit for the Uniformed Services University of the Health Sciences 1987 Class

The Military Departments' Corrections Boards currently are considering applications from Uniformed Services University of the Health Services (USUHS) students who entered USUHS in 1983 and are seeking correction of military records that would entitle them to constructive service credit.

THEY ALWAYS TRY TO LEAN ON THE FIRST SPANISH LETTER

Although USUHS officials report that in general prospective matriculants to the USUHS Class of 1987 were verbally informed that the USUHS bulletin contained incorrect information regarding the provision of constructive service credit, it appears possible that some students may not have received the correct information. Although I am aware that Comptroller General decisions and the 1992 Audit Report of the DoD Inspector General do not recommend the award of constructive service credit to former USUHS students, the respective Boards have granted relief in some cases.

While I endorse the independence of each Board and recognize the broad discretion they possess, I urge the Boards to consider the adoption of uniform guidelines for the evaluation and disposition of this group of cases to promote consistency among the Boards in the granting or denial of relief. I make this recommendation recognizing that there are a number of applications pending before the different Boards and that additional applications may be made. Because the facts of each case will be different, I believe it is important that these cases be considered on an individual basis. However, in my view, it may be appropriate for the Boards collectively to consider what showing each applicant should be required to make to demonstrate that relief is appropriate. In this way, applicants who are able to make a sufficient showing under a standard approach will receive the same relief regardless of the applicant's branch of Service.

THIS WAS NEVER DONE TO THE BEST OF MY KNOWLEDGE

Rudy de Leon

Rudy de Leon

703 695-5254. Rush: 697-2121

# AFFIDAVIT OF JOHN D. BOYER, M.D.

STATE OF HAWAII

COUNTY OF OAHU

SS:

1. I, John D. Boyer, M.D., do hereby state:

2. I matriculated at the Uniformed Services University of the Health Sciences (USUHS) in August 1983 and graduated in May, 1987 as a member of the Class of 1987.

3. I was never informed of any rule or regulation or law which would prevent me from earning pay and credits for my years at USUHS, and never learned of DOPMA 1981 modifications until after matriculating at USUHS.

4. Had I known of the DOPMA changes in time to accept entrance into another medical school, I would not have attended USUHS.

5. The 1983-1984 USUHS Bulletin was made available to me prior to matriculation, and I relied on its presentations regarding pay, "Longevity credit for pay purposed accrues for students for time spent in school" (USUHS 1983-1984 Bulletin, pg. 45).

6. I declare under penalties of perjury that the foregoing statement is true and correct.

John D. Boyer, M.D.

State of Hawaii

County of Oahu, to wit: 3/21/03

I, RAQUEL P. ALESNA, a Notary Public in and fore above jurisdictions, hereby certify that John D. Boyer MD, Who is known to me to be the person who executed the above document, personnaly appeared before me in the above jurisdictions and acknowledged the same to be his act and deed.

Given under my hand and seal this 21st day of March, 2003.

Notary Public

My Commission expires on: Nov 3, 2006.

RAQUEL P. ALESNA NOTARY PUBLIC STATE OF HAWAII

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
WASHINGTON, D.C. 20370-5100

WDP:lcc:wma
Docket No. 14695-89
25 June 1992

LT John D. Boyer, USN
830 Balboa Avenue
Coronado, CA 92118

Dear Lieutenant Boyer:

This is in reference to your application, DD Form 149, dated 25 May 1992. You previously petitioned the Board and were advised in our letter of 10 July 1990 that your application had been denied.

Your current application has been carefully examined. Although at least some of the material you have submitted is new, it is not material. In other words, even if this material was presented to the Board, the decision would inevitably be the same. Accordingly, reconsideration is not appropriate at this time.

It is regretted that the facts and circumstances of your case are such that a more favorable reply cannot be made.

Sincerely,

W. DEAN PFEIFFER
Executive Director

kc

REFERENDUM

JUN 11 1992
p-recon

Affix
Barcode
Label
Here

Subject's Name:

| Boyer | John | D. | |
|---|---|---|---|
| Last | First | MI | Suffix |

☐ REQUEST FOR RECONSIDERATION

☐ Approved: ________ ________

JUN 19 1992 ☑ Disapproved: L C Crone 11 Jun 92
D L Adams 11 June 92
Signature Date

☐ ADMINISTRATIVE RE-OPEN

☐ Approved: ________ ________
Signature Date

COMMENTS: ________

NOTE: Please deliver to OIS Section with "closed" BCNR file

NEW Docket No.

(OIS/11 1Jul86)

00097

...UNDER THE PRO... OF TITLE 10, U.S. CODE, SECTIO... 1552

(Please read instr... reverse side BEFORE completing applicatio...)

OMB No. 0704-0003
Expires Dec 31, 1988

P-Recon

PRIVACY ACT STATEMENT

AUTHORITY: Title 10, U.S. Code 1552, Executive O... [redacted]

PRINCIPAL PURPOSE: To apply for correction of a military re... [redacted]

ROUTINE USES: To docket a case. Reviewed by board [redacted] to apply to board. To compare facts present with e... [redacted]

DISCLOSURE: Voluntary. If information is not furn... [redacted]

**1. APPLICANT DATA**

a. BRANCH OF SERVICE (X one)

☐ (1) ARMY ☒ (2) NAVY ☐ (3) AIR FORCE ☐ (4) MARINE CORPS ☐ (5) COAST GUARD

| b. NAME (Last, First, Middle Initial) (Please print) | c. PRESENT PAYGRADE | d. SERVICE NUMBER (If applicable) | e. SOCIAL SECURITY NUMBER |
|---|---|---|---|
| Boyer, John D. | LT/O-3 | 2100 | 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 |

| 2. TYPE OF DISCHARGE (If by court-martial, state type of court) | 3. PRESENT STATUS, IF ANY, WITH RESPECT TO THE ARMED SERVICES (Active duty, Retired, Reserve, etc.) | 4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE D... |
|---|---|---|
| N/A | Active Duty | N/A |

5. ORGANIZATION AT TIME OF ALLEGED ERROR IN RECORD
Uniformed Services Univ. of the Health Sciences

6. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C. (No expense to the Government) (X one)
☐ a. YES ☒ b. NO

**7. COUNSEL (If any)**

| a. NAME (Last, First, Middle Initial) | b. ADDRESS (Street, City, State and Zip Code) |
|---|---|
| None | N/A |

8. I REQUEST THE FOLLOWING CORRECTION OF ERROR OR INJUSTICE:
Credit the four years spent on active duty at the Uniformed Services University of the Heal... Sciences towards pay, promotion, and retirement.

9. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST IN THE FOLLOWING PARTICULARS:

Please see enclosure dated 25 May 92

10. IN SUPPORT OF THIS APPLICATION I SUBMIT AS EVIDENCE THE FOLLOWING: (If Veterans Administration records are pertinent to your case, give Regional Office location and Claim Number.)

Please see enclosures.

**11. ALLEGED ERROR OR INJUSTICE DATA**

a. DATE OF DISCOVERY 1984

b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THIS APPLICATION

The BCNR has considered a previous application for relief of this injustice and encouraged resubmission based upon new material evidence.

12. APPLICANT MUST SIGN IN ITEM 16. IF THE RECORD IN QUESTION IS THAT OF A DECEASED OR INCOMPETENT PERSON, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY APPLICATION. IF APPLICATION IS SIGNED BY OTHER THAN APPLICANT, INDICATE RELATIONSHIP OR STATUS BY MARKING APPROPRIATE BOX.

☐ a. SPOUSE ☐ b. WIDOW ☐ c. WIDOWER ☐ d. NEXT OF KIN ☐ e. LEGAL REP ☐ f. OTHER (Specify)

13. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM. (U.S. Code, Title 18, Sec. 287, 1001, provides a penalty of not more than $10,000 fine or not more than 5 years imprisonment or both.)

14. COMPLETE CURRENT ADDRESS, INCLUDING ZIP CODE (Applicant should forward notification of all changes of address.)
Lt John Boyer 830 Balboa Ave. Coronado, CA 92118

DOCUMENT NUMBER (Do not write in this space)
JUN 4 1992

| 15. DATE SIGNED | 16. SIGNATURE (Applicant must sign here.) |
|---|---|
| 25 May 92 | John Boyer [signature] 25 May 92 |

DD Form 149, FEB 86 Previous editions are obsolete

00098

To: Board for Correction of Naval Records 25 May 92

From: LT John Boyer, 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/2100

Subject: Relief of Injustice

Encl:
a) interview invitation ltr
b) post-interview ltr
c) unconditional acceptance ltr
d) Jay P. Sanford ltr dated 26 Dec 85
e) Jay P. Sanford ltr dated 11 Dec 86
f) Peter Stavish ltr dated 18 Apr 85
g) BCNR representative statements in Navy Times
h) BCNR ltr dated 10 July 1990
i) First application to BCNR

1. I respectfully request reconsideration for the correction of my U.S. Naval Service Record to count the four years spent on active duty at the Uniformed Services University of the Health Sciences (USUHS) for the purpose of pay, promotion, and retirement. Recent statements by the Executive Director of the Board of Corrections of Naval Records (BCNR) indicate that the U.S. Navy's policy on this issue is to consider each officer's case individually and not to provide blanket credit for all similar claims. As my first petition to the BCNR was part of a group action seeking *blanket* credit for all Naval officers in the USUHS class of 1987 relief of injustice was not granted. Therefore, I am compelled to submit a petition based upon the facts of my personal experience. It will be made evident that at no time from the initiation of my medical school applications until many months after matriculation was I correctly informed that the four years spent on active duty as a Naval Officer at USUHS would not count for the purposes of pay and retirement. In fact, assurances were made that my status and pay would be no different than that of students then enrolled at USUHS.

2. The following chronological account of encounters with USUHS illustrates that I was provided either misinformation or non-disclosure of the Defense Officer Personnel Management Act (DOPMA) in every encounter with the Department of Defense:

a.) Initial review of the Official 1983-4 USUHS school bulletin detailed that credit for the four years spent at USUHS as an active duty officer in the military would be creditable towards pay and retirement. I was not informed that this information was incorrect.

b.) During the application process no information in the secondary application or in any correspondence from USUHS advised me that the four

years spent at USUHS would not be credible for the purposes of pay and retirement or that the school bulletin was in error.

c.) I was interviewed as a prospective medical student at USUHS on December 15, 1982. Mr. Peter Stavish, USUHS Registrar, provided a verbal welcome and introduction to the University lasting less than 20 minutes. Mr. Stavish did not mention DOPMA nor did he say that there were to be any changes that would affect our pay or retirement (ltr enclosed). I was later interviewed by two active duty physicians who also made no disclosure of DOPMA and its effect on pay and retirement. As prospective medical students, we were later taken on a tour of the school by selected USUHS students Again, no disclosure of DOPMA was made nor was it suggested that prospective students such as myself should expect any difference in pay or benefits. In addition, no literature was provided advising me of any existing or potential changes to my pay status if accepted to USUHS.

d.) I was informed of my unconditional acceptance to USUHS on 29 Mar 1983 by letter (enclosed). There was no disclosure of the changes to be expected resulting from DOPMA.

e.) Taking the Oath of Office in Spring 1983 as Ensign, USNR, was a prerequisite prior to matriculation at USUHS and admission to Officer Indoctrination School at Newport, RI. Because of this, I could not consider possible acceptance at affordable California medical schools where my application was still in serious consideration. Had I known about the effects of DOPMA my ultimate decision in committing to military service as opposed to a civilian medical school may have been different. I detrimentally relied on misinformation when making my medical school choice.

f.) Upon arrival at USUHS in August 1983 no disclosure was made of DOPMA and the impact it would have on pay and retirement.

g.) I never was referred to, nor had any contact with an official Navy Recruiter for the purpose of benefits counseling.

h.) Statements by Jay P. Sanford, President of USUHS, make clear his conviction that disclosure of DOPMA during the applicant interview process was absent or insufficient at best. Mr. Stavish omitted disclosure of DOPMA at my interview.

3. In summation, silence and misinformation about the impact of DOPMA led me to believe that the four years spent on active duty at the USUHS would be credible towards determination of pay and retirement. The fact that four years in medical school would not count towards pay, promotion and retirement certainly would have been a consideration when I made the decision to enter the military, *if I had known*! There is no basis to treat me any differently than other students enrolled in USUHS at the time I matriculated. Furthermore, being denied the information about DOPMA was a material breach of my contract and circumstances of my Naval service and deserves relief. I