respectfully request relief of this injustice, that I be given credit as active duty service the four years I spent at USUHS.

John Boyer
Flight Surgeon
LT, MC, USN

UNIFORMED SERVICES UN.. .RSI.
OF THE
HEALTH SCIENCES
4301 JONES BRIDGE ROAD
BETHESDA, MARYLAND 20014

HEADQUARTERS COMPANY
AND
TROOP COMMAND

TEACHING HOS
WALTER REED ARMY MEDICAL C
NATIONAL NAVAL MEDICAL C
MALCOLM GROW AIR FORCE MEDICAL C
WILFORD HALL AIR FORCE MEDICAL C

Dear Applicant:

An interview invitation for the School of Medicine has recently been extended to you. We look forward to meeting you.

As part of the interview process, it is necessary to complete the attached forms. (Physical examinations done at AFEES Stations will satisfy the requirement for the medical examination.) Enclosed is an Instruction Booklet to help you execute DD Form 398, Statement of Personal History. There is also an Instruction Sheet to assist you with DD Form 1584, National Agency Check Request. The four (4) fingerprint cards must be filled out and executed prior to your interview. A police station or government agency should be able to aid you in this procedure. SF 93, Report of Medical History does not have to be signed by a physician—omit question #25. Leave questions #4, 6 and 7 blank; question #5 should be answered "USUHS Candidate". In answering question #3, enter where you are now living. It does not have to be your legal address. Also include a telephone number where you can be reached or where a message may be left for you. The rest of the form is self-explanatory. It is also necessary to complete the enclosed drug form.

Please bring the completed forms with you at time of interview. If you need any assistance, please do not hesitate to contact the Military Personnel Office (202-295-3244/3740).

Thank you for your cooperation.

Sincerely,

GEORGE C. JOYNES
1SG, USA
Asst. C, MILPERS

00102

UNIFORMED SERVICES UNIVERSITY
OF THE
HEALTH SCIENCES
4301 JONES BRIDGE ROAD
BETHESDA, MARYLAND 20814

MILITARY PERSONNEL

15 December 1982

TEACHING HOSPITALS
WALTER REED ARMY MEDICAL CENTER
NATIONAL NAVAL MEDICAL CENTER
MALCOLM GROW AIR FORCE MEDICAL CENTER
WILFORD HALL AIR FORCE MEDICAL CENTER

TO: NAME John D. Boyer :

PHYSICAL DATE January 07, 1983 :

LOCATION OF PHYSICAL: Mirimar NAS
California :

The Uniformed Services University of the Health Sciences, School of Medicine requires each applicant who has been interviewed to complete all required Medical Forms prior to Admission to the School of Medicine and to answer the questions on the forms honestly and accurately to the best of the applicant's knowledge.

If the applicant fails to answer the required questions honestly and accurately, he/she will be subject to be disqualified as an applicant, or if already matriculated will be subject to disenrollment. Additionally, materials may be circulated to other medical schools throughout the American Medical College Application Service (AMCAS). Falsifying official documents is a Federal offense.

The physical date and location of physical information has been made available prior to official notification from the Department of Defense Medical Examination Review Board (DODMERB) in order that you may have a longer timeframe to make appropriate plans. If you haven't received the Letter of Instruction from DODMERB within the next 30 days, please contact 1SGT Joynes, immediately, on 202-295-3087.

GEORGE C. JOYNES
1SGT, USA
Assistant Director

00103

UNIFORMED SERVICES UNIVERSITY
OF THE
HEALTH SCIENCES
SCHOOL OF MEDICINE
4301 JONES BRIDGE ROAD
BETHESDA, MARYLAND 20814

ACADEMIC
SUPPORT/ADMISSIONS

TEACHING HOSPITAL
WALTER REED ARMY MEDICAL CENTE
NATIONAL NAVAL MEDICAL CENTE
MALCOLM GROW AIR FORCE MEDICAL CENTE
WILFORD HALL AIR FORCE MEDICAL CENTE

29 March 1983

John D. Boyer
830 Balboa Avenue
Coronado, CA 92118

Dear Mr. Boyer:

I am delighted to inform you that you have been designated an unconditional acceptee for entrance to the School of Medicine. Your change in status from a conditional to an unconditional acceptee is the result of favorable action by the United States Navy on your nomination for appointment in that component.

The military department in which you are to be commissioned will be contacting you shortly to arrange for your assignment to the School as a Medical Officer Candidate. If any problems are encountered, or if a few weeks elapse without a word from your military department, please advise our Military Personnel Office (telephone: 301-295-3086). Every effort is being made to expedite your commissioning and issuance of orders. Please cooperate in this effort by promptly filling out and returning all documents requested by your service. It is in your best interest to accomplish this by return mail.

Now that your matriculation to the School is definite, I am referring your name to the Office of the Assistant Dean for Student Affairs, (telephone: 301-295-3185) which is responsbile for coordinating all matters incidental to the inprocessing of students. This office will be in touch with you to advise you of registration procedures and requirements, and also to render any assistance you might require in relocating to the School.

Since this letter constitutes a firm commitment on the School's part to place you in this year's class, I would ask that you take immediate action to withdraw from any other school in which you are currently holding a space, so as to allow that institution to offer the place to another applicant. You are, of course, free to keep open any applications you have pending so long as you do not hold spaces in two or more schools simultaneously.

The fact that you have been unconditionally accepted for entrance to the School of Medicine should make you a very proud person, and justifiably so because the competition for admission is extremely keen. I compliment you on your accomplishment and wish you the very best in the academic years ahead and in your military career.

If I can ever be of any assistance to you, please feel free to contact me.

Sincerely,

PETER J. STAVISH, M.B.A.
LTC, MSC, USA (RET)
Director of Admissions
Registrar

cc: Assistant Dean
for Student Affairs

Military Personnel
1SG Joynes, USA

UNIFORMED SERVICES UNIVERSITY OF THE HEALTH SCIENCES
F. EDWARD HEBERT SCHOOL OF MEDICINE
4301 JONES BRIDGE ROAD
BETHESDA, MARYLAND 20814

OF THE PRESIDENT

TEACHING HOSPITALS
WALTER REED ARMY MEDICAL CENTER
NAVAL HOSPITAL, BETHESDA
MALCOLM GROW AIR FORCE MEDICAL CENTER
WILFORD HALL AIR FORCE MEDICAL CENTER

December 26, 1985

MEMORANDUM FOR AIR FORCE BOARD FOR CORRECTION OF MILITARY RECORDS

SUBJECT: Defense Officers Personnel Management Act (DOPMA) and Members of the Uniformed Services University of the Health Sciences Class of 1987

1. I am aware that under DOPMA individuals enrolled at USUHS after September 14, 1981 would not receive credit for the four years spent at USUHS in computing years of service creditable for basic pay. I am also aware that an apparent misunderstanding regarding this service credit has resulted in a number of petitions for records correction to be filed by members of the Class of 1987 of the F. Edward Hebert School of Medicine.

2. The text for the Uniformed Services University School of Medicine Bulletin 1983-1984 was written in December 1982 and failed to include the revisions of DOPMA, attachment 1. At the time of interviews for the Class of 1987 (December 1982-March 1983), this information was to be included in a broad one-hour briefing on the application process, the academic program and careers in military medicine, attachment 2 (an outline of the briefing).

3. After review of the specific application process, it is apparent that some members of the Class of 1987 did not receive the information regarding the changes in computing years of service creditable for basic pay and retired pay. The evidence for this is based upon the following:

a. It is true the material explaining DOPMA was included in the briefing given by the Director of Admissions. However, there were sets of interviews during which he did not do the briefing and others in which he was called out. It is important to recall that interview days are held multiple times in the fall and winter and at multiple locations in the United States. When the Director of Admissions was not available, the alternate briefer did not include this material, but rather did a standard briefing without reference to the DOPMA changes in military personnel regulations.

b. During the typical Admissions interview day, each applicant was interviewed separately by two active duty medical officers. However, the interviewers were not specifically requested to clarify DOPMA during the interview, and it is equally likely that the interviewers incorrectly briefed the applicants on the service credits because the interviewers were not affected by the DOPMA changes in longevity credit for time spent in medical school. Here again, it is important to note that a great number of active duty medical officers serve as interviewers, and that these individuals perform this function on an infrequent basis.

c. Applicants often met with currently enrolled students while visiting our campus; however, these students also were not specifically requested to clarify DOPMA and it was not an issue with them since Section 625 preserved credit for them.

d. The contracts entered into between the matriculant and the specific service, prepared by the respective services and not the University, did not clarify years of service creditable for basic and retired pay.

I. It is then apparent that through no fault of their own, some members of the Class of 1987 relied upon incorrect information given in good faith, and matriculated under a misconception regarding creditable service.

. In the fall of 1983, having recognized the error in the 1983-1984 Bulletin, he University revised the 1984-1985 Bulletin, attachment 3. The impact of OPMA was specifically stressed in the interview briefings, attachment 4. letter was sent to each prior service matriculant of the Class of 1988 in une 1984 prior to matriculation, attachment 5. In 1985 such a letter was sent o each matriculant at the time of initial conditional acceptance. Lack of nformation or misinformation regarding DOPMA will not be an issue for the lass of 1988 and on, since the material has been incorporated in the current ılletins, is briefed and covered in the conditional acceptance letter.

. Based upon my review and analysis, a percentage of members of the Class of 987 were either not or were inaccurately informed of the impact of the DOPMA ı basic pay and retirement pay. I recommend that the Board consider en bloc ırrection of this error as it did for the Class of 1986. The circumstances esented with these petitions, i.e., incorrect information in the Bulletin, iefings where the issue was not clarified, and interviews with active duty dical officers where the error may have been compounded, are all substantially milar to the facts presented by the Class of 1986 petitions. If not en bloc, ıen individual evaluation as to whether or not the information was briefed uld seem the fair alternative, although more difficult.

Jay P. Sanford, M.D.
President/Dean

closures 5

UNIFORMED SERVICES UNIVERSITY OF THE HEALTH SCIENCES
F. EDWARD HÉBERT SCHOOL OF MEDICINE
4301 JONES BRIDGE ROAD
BETHESDA, MARYLAND 20814-4799

OFFICE OF THE DEAN

11 December 1986

TEACHING HOSPITALS
WALTER REED ARMY MEDICAL CENTER
NAVAL HOSPITAL, BETHESDA
MALCOLM GROW AIR FORCE MEDICAL CENTER
WILFORD HALL AIR FORCE MEDICAL CENTER

MEMORANDUM FOR AIR FORCE BOARD OF CORRECTIONS

SUBJECT: Defense Officers Personnel Management Act (DOPMA) and Members of the Uniformed Services University of the Health Sciences Class of 1987

1. On 26 December 1985 I submitted to you a memorandum on this same subject, Enclosures 1-6.

2. In the interim, it is my understanding that neither en bloc action nor reivew of individual petitions has been undertaken. Based upon this, I am again writing to clarify the circumstances surrounding these petitions for correction. In the interim I have further attempted to satisfy myself as to the point of whether or not there is reason to believe that this material was always briefed to the applicants. From meetings with members of the Class of 1987 who would have had specific reason to listen carefully for material re DOPMA, i.e., those with prior line service, I am now convinced that even at some of the briefings presented by the Director of Admissions that specific details regarding service creditable for basic pay were not included or that a change in this aspect of DOPMA was implied.

3. Based upon these further considerations, I again conclude that a proportion of members of the Class of 1987 were either not or were inaccurately informed of the impact of the DOPMA on basic pay and retirement pay. I again recommend that the Board consider correction of this error as it did for the Class of 1986. The circumstances presented with these petitions, i.e., incorrect information in the Bulletin, briefings where the issue was not clarified and interviews with active duty medical officers where the issue may have been confounded, are substantially similar to the facts presented by the Class of 1986 petitions. I would urge that each petition be considered specifically as to whether the individual petitioner states he/she was either not informed or misinformed. As Air Force officers, I would accept their specific statements. If you have questions or desire additional clarification or information, please contact me.

Jay P. Sanford, M.D.
President/Dean

Encl 6

UNIFORMED SERVICE UNIVERSITY OF THE HEALTH SCIENCE
F. EDWARD HEBERT SCHOOL OF MEDICINE
4301 JONES BRIDGE ROAD
BETHESDA, MARYLAND 20814

18 April 1985

REGISTRAR

TEACHING HOSPITALS
WALTER REED ARMY MEDICAL CENTER
NAVAL HOSPITAL BETHESDA
MALCOLM GROW AIR FORCE MEDICAL CENTER
WILFORD HALL AIR FORCE MEDICAL CENTER

MEMORANDUM FOR THE BOARD OF CORRECTIONS

SUBJECT: Pay and Retirement Benefits at the Uniformed Services University of the Health Sciences

Enclosed as Attachment 1 is a memorandum from Second Lieutenant Kevin A. Hall, USAF, MSC, President, Class of 1987, subject as above, dated 30 January 1985.

A Memorandum for the Record, subject: Medical School Creditable for Pay Purposes, dated 3 April 1984 (Attachment 2), addressed the issue for those students who matriculated to the Uniformed Services University of the Health Sciences (USUHS) in 1982 (anticipated graduation in 1986). Subsequent to that 1982 matriculating class and subsequent admission cycles (1983) thereafter, all interested matriculants who were interviewed for the Class of 1987 and subsequent classes, were verbally informed that the information contained in the USUHS Bulletin, 1983-1984 regarding "longevity credit for pay purposes occurs for students for time spent in school....and that....time spent as a medical student...is creditable for computing retired pay once retirement eligibility has been established," was in fact no longer true due to the recent DOPMA legislation.

It cannot be said that every interviewee was told the exact information on each interview day. On three occasions I did not personally give the briefing to the interviewees; two of the briefings were conducted on the west coast (which I did not attend) and one was given on the east coast, which I did not attend because I was out on the west coast. It is very possible that a given segment of the Class of 1987 could have, and probably did, receive inaccurate or incomplete information from any number of official/semi-official sources concerning the effects upon entitlements (pay purposes at the time of graduation and retirement) due to the DOPMA legislation. All this obviously has resulted in a confused and misinformed population.

PETER J. STAVISH, M.B.A.
LTC, MSC, USA (Ret)
Director of Admissions/Registrar

Attachments (2)

ceived 41 official applications.

"I think it is more than we hoped for," Higgins said of the reserve response. "A lot of them were turned on again to active duty."

Higgins said the 690 inquiries included 516 medical corpsmen, 103 nurses, 17 doctors, 31 medical service corps personnel, 19 dental technicians and four dentists. Higgins said medical officials still expect to lose some reservists as a result of the recent ac-

... duty.

tivation, but the short length of the war and the strong feelings of national pride may lessen the blow.

"The sense of patriotism infecting everyone is very high," Higgins said. "They are already a part of us and it is a lot easier to keep them than to start from scratch."

Officials at Navy hospitals in Portsmouth, Va., and Bethesda, Md., said many of the reservists recalled to fill temporary vacancies at the hospitals have indicated they would like to stay.

At Portsmouth, more than 100 medical reservists including a handful of doctors have expressed an interest in staying on active duty for an additional two to five years, said Lt.(jg) Jeff Bender, a hospital spokesman. Bender said such requests will be accepted based on the needs of the Navy, with enlisted personnel receiving an answer

... cers, these include all specialties in the Navy Medical Corps as well as full-time, residency training positions in anesthesia, family practice, internal medicine, pathology, pediatrics and psychiatry.

In the dental corps, oral surgeons, orthodontists and general dentists are needed. The Navy also has openings in all nurse specialties and in several specialties in the medical service corps.

For enlisted personnel, Navy personnel officials said there is a great need for medical corpsmen.

# Navy says no to blanket credit for med school program

WASHINGTON — Despite a recent change of heart by the Air Force, Navy officials say they will not reverse their previous decision to deny blanket in-service credit and back pay to about 200 Navy doctors for the years they spent in medical school under the Armed Forces Health Professions Scholarship Program.

If the Navy were to follow the lead of the Army, and now the Air Force, to award service credit for medical school, the change could provide the Navy physicians with as much as $10 million in back pay, as well as increasing their current pay and future retirement benefits, a Navy official said.

Passage of the 1981 Defense Officer Personnel Management Act eliminated the service practice of granting credit for pay purposes for time spent in medical school under the service scholarship program. However, in the months immediately following the DOPMA enactment, students recruited for both the scholarship program and the Uniformed Services University of the Health Sciences were not told of the change.

USUHS officials managed to secure such credit for its 1986 graduating class by arguing that the documents the university used to enroll students erroneously promised such credit. In early 1989, the Army's Board for Correction of Military Records decided that its AFHPSP students from the 1985 and 1986 classes also should receive the credit.

The Navy, however, has handled the doctors' appeals on a case by case basis, only awarding credit and back pay if the physician could get a signed statement from the recruiter who erroneously promised the credit to them.

A move by the Air Force earlier this year to follow the Army's 1989 action has put added pressure on the Navy.

Retired Navy Capt. Dean Pfeiffer, executive director of the Board of Corrections of Naval Records which has handled the case-by-case decisions of the issue, said, based on the Air Force decision, he plans to ask Barbara Pope, assistant secretary of the Navy for manpower and reserve affairs, to reconsider the Navy's position on the matter.

"I don't know what the Navy is going to do, but I am going to bring it to her attention," Pfeiffer said. "Ms. Pope is very interested in this type of thing, but I don't know what her reaction might be."

A Navy spokesman for Ms. Pope, however, said she already had ruled on the unresolved cases last year, taking the position that the rule barring medical school credit under DOPMA still applies.

One of the Navy doctors fighting for the credit, who agreed to speak to *Navy Times* on the condition of anonymity, said he has written countless letters and made numerous phone calls in what has been a losing battle over the last five years. The doctor's problem is that he can no longer find the recruiter who signed him up in late 1981.

"It seemed pretty unfair," the doctor said. "It comes down to that I can't prove it."

The doctor, a lieutenant commander who now works as an ear, nose and throat specialist, estimated the Navy owes him $12,000 in back pay and he would receive an immediate pay hike of $800 a month, if the credit were awarded.

"That is a nice little down payment on a house," he said.

Pfeiffer said he has approached Navy manpower officials several times on the issue since the Army moved to credit its students.

"We went forward and said, 'The Army has done it for all their students. What is our policy?' " Pfeiffer recalled. "We were told to do them case by case."

In addition, Pfeiffer said Navy Surgeon General Vice Adm. James A. Zimble wrote to Secretary of the Navy H. Lawrence Garrett III last summer urging the secretary to extend the service credit to the doctors. However, Pfeiffer said officials rejected the recommendation and instead reiterated their instructions to continue to deal with the matter only on a case-by-case basis.

Zimble could not be reached for comment.

Under current policy, doctors must find the individual recruiter who signed them up for the medical scholarship program and have that recruiter acknowledge in writing that the prospective student was misled about the credit question. Pfeiffer said about half of the original pool of 354 Navy doctors from the class of 1986 were granted the in-service credit under this method. However, he estimated that close to 200 doctors remain uncompensated for their four years in the scholarship program.

By Marc Zolton

00110

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
WASHINGTON, D.C. 20370-5100

LCC:jlb
Docket No: 14695-89
10 July 1990

LT JOHN D. BOYER, USNR
c/o Jeffrey M. Glosser
Whiteford, Taylor & Preston
Suite 400, 888 17th St., N.W.
Washington, DC 20006-3939

Dear Lieutenant BOYER:

Reference is made to your application for correction of your naval record under the provisions of Title 10 U.S.C. 1552.

A panel of three members of the Board for Correction of Naval Records considered your application on 4 April 1990. Your allegations of error and injustice were reviewed in accordance with administrative regulations and procedures applicable to the proceedings of this Board. Documentary material considered by the Board consisted of your application, together with all material submitted in support thereof, your naval record, and applicable statutes, regulations and policies. In addition, the Board considered the memorandum from Assistant Secretary of Defense dated 2 April 1985 and Letter Judge Advocate General of the Navy 1070 Ser 131/11393/5 dated 5 August 1985, copies of which are attached.

After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to establish probable material error or injustice. The Board determined that the Defense Officer Personnel Management Act (DOPMA), effective 15 September 1981, is the controlling legislation and precludes granting constructive service credit for pay and retirement to the Uniformed Services University Health Sciences (USUHS) Class of 1987 which entered the University during 1983. The Board further concluded that to grant your request would be contrary to both the spirit and clear intent of the law.

As to the contention that you were misled by erroneous advice during recruitment as to constructive service credit, the Board was not convinced that the misscounselling, if any, should not reasonably have been a principal motivating factor in your decision to pursue a medical education at USUHS.

The Board also considered its previous action of granting relief to the USUHS students in the Class of 1986 who entered the University in 1982 and concluded that, such action was based on

Docket No: 14695-89

the unique circumstances surrounding those petitions, i.e., both the Air Force and Army Correction Boards had previously granted relief to Air Force and Army personnel in the Class of 1986, and not to do so for Navy personnel would result in an inequity. However, this reasoning does not apply to the Class of 1987 since the other correction boards have not acted favorably on similar petitions. Accordingly, your application has been denied. The names and votes of the Board members will be furnished upon request.

It is regretted that the circumstances of your case are such that favorable action cannot be taken. However, you are entitled to have the Board reconsider its decision upon submission of new and material evidence. In this regard, it is important to keep in mind that a presumption of regularity attaches to all official records. Consequently, when applying for a correction of an official naval record, the burden is on the applicant to demonstrate the existence of an error or injustice.

Sincerely,

W. DEAN PFEIFFER
Executive Director

Enclosure

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
WASHINGTON, D.C. 20370-5100

LCC:jlb
Docket No: 14695-89
10 July 1990

LT JOHN D. BOYER, USNR
c/o Jeffrey M. Glosser
Whiteford, Taylor & Preston
Suite 400, 888 17th St., N.W.
Washington, DC 20006-3939

Dear Lieutenant BOYER:

Reference is made to your application for correction of your naval record under the provisions of Title 10 U.S.C. 1552.

A panel of three members of the Board for Correction of Naval Records considered your application on 4 April 1990. Your allegations of error and injustice were reviewed in accordance with administrative regulations and procedures applicable to the proceedings of this Board. Documentary material considered by the Board consisted of your application, together with all material submitted in support thereof, your naval record, and applicable statutes, regulations and policies. In addition, the Board considered the memorandum from Assistant Secretary of Defense dated 2 April 1985 and Letter Judge Advocate General of the Navy 1070 Ser 131/11393/5 dated 5 August 1985, copies of which are attached.

After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to establish probable material error or injustice. The Board determined that the Defense Officer Personnel Management Act (DOPMA), effective 15 September 1981, is the controlling legislation and precludes granting constructive service credit for pay and retirement to the Uniformed Services University Health Sciences (USUHS) Class of 1987 which entered the University during 1983. The Board further concluded that to grant your request would be contrary to both the spirit and clear intent of the law.

As to the contention that you were misled by erroneous advice during recruitment as to constructive service credit, the Board was not convinced that the miscounselling, if any, should not reasonably have been a principal motivating factor in your decision to pursue a medical education at USUHS.

The Board also considered its previous action of granting relief to the USUHS students in the class of 1986 who entered the University in 1982 and concluded that, such action was based on

the unique circumstances surrounding those petitions, i.e., both the Air Force and Army Correction Boards had previously granted relief to Air Force and Army personnel in the Class of 1986, and not to do so for Navy personnel would result in an inequity. However, this reasoning does not apply to the Class of 1987 since the other correction boards have not acted favorably on similar petitions. Accordingly, your application has been denied. The names and votes of the Board members will be furnished upon request.

It is regretted that the circumstances of your case are such that favorable action cannot be taken. However, you are entitled to have the Board reconsider its decision upon submission of new and material evidence. In this regard, it is important to keep in mind that a presumption of regularity attaches to all official records. Consequently, when applying for a correction of an official naval record, the burden is on the applicant to demonstrate the existence of an error or injustice.

Sincerely,

W. DEAN PFEIFFER
Executive Director

Enclosure

MEMORANDUM TO FILE

Docket No. 14695-89

Examiner: LCC

Subj: * JOHN D. BOYER, USN, 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

Personal appearance requested: NO

Reconsideration: NO

Action Requested: 10

In addition to Petitioner's application (DD-149) with any attachments and any related correspondence, the Board considered the following records:

- [ ] Enlisted/Officer Service Record
- [ ] Examiner's Case Summary
- [ ] NDRB File
- [ ] Record of Court-Martial
- [ ] Medical Record
- [ ] VA Records
- [ ] PEB Record
- [ ] Advisory Opinion
- [ ] Other: ______

Messrs. Corcoran, Herman, and McGavran

Ms. ______

voted on 4 April 1990 to:

EXECUTIVE SESSION:

- [ ] Grant relief
- [ ] Partial relief
- [XX] Deny

APR 5 1990

- [ ] Grant personal appearance

- [ ] Minority Vote: Mr/Ms ______ voted To ______

Comments: ______

- [ ] That Petitioner's naval record be corrected to show that on /or ______, Petitioner was issued a honorable/general discharge by reason of misconduct/or ______, vice the discharge actually issued on that date.

00115

PERSONNEL ON LINE LISTING
PROMOTION, ADMIN, ACCTG

DATE: 90038
LAST UPDATE: 036

400648294 BOYER JOHN D ACC: 100 DESIG: 2105 GRD: 870516 GLI:

(—— SUMMARY ——)
PEBD: 870516 DGAD INIT: 830702 PRES GR: J
ACBD: 870516 CURR: 870516 PERM GR: J
ADBD: 870516 SPOT IND: ELIG RET: 07
DOR: 870516 GR: J FIRST COMM:
FROCK: DOR: 870516 EFDT GR: 870516
COG: P YG: 83 AOC: X8
FAC: OCC: EXCP: I
CLAIM: 70B0 SUB MNGT CDE: 20 RESIG LTR:

(—— PREVIOUS SERVICE
BRANCH:
FROM:
MONTHS:
HIGH GR:

PRECEDENCE: L 06672960
PROM STATUS:

(- SERVICE DATES -)
SVCD:
PROF: 870516
FROM:

(- LOSS DATA -)
CODE: R
DATE: 9505

(-- SEPARATION CODES --)
REA: DATE:
SPD: BLC:

(- DATE OF RANK
W2:
ENSIGN: 830405
LT(JG): 000000
LT: 870516
LCDR:
CDR:
CAPT:
FLAG:

(-- DESIG HIST --)
DESIG DATE
(1): 1975 8705
(2):

(- SOURCE CODES -)
ORIG: 110
CURR: 680

(———— UIC ————)
ACTUAL: 09179
PARENT: 09179
PREV: 30642

```
SYSTEM      : MLS                                              DATE: 90/04/04
SCREEN NO.: FIMLS30Q                                           TIME: 09:37:36
PROGRAM     : FIMLP300
-------------------------- M E M B E R   S T A T U S ------------------------
. SSN: 400648294 . NAME: BOYER JOHN D                    SEX: M DOB: 601019
 CURRENT STATUS:                                         STATUS DATE: 870596
      MILITARY TYPE              :   UNKNOWN
      BRANCH OF SERVICE          :   USNR
      DUTY STATUS                :   ACTIVE
      MEMBER TYPE                :   OFFICER
      MOBILIZATION FORCE         :   (NOT DETERMINED)
 MILITARY GRADE: LIEUTENANT
 DESIGNATION    : 2105
                                              MLS UPDATE DATE: 891116 / 1
-----------------------------------------------------------------------------
PF1: SSN QUERY              PF2: NAME QUERY            PF3: UIC QUERY
PF4: CURRENT DUTY           PF5: ULTIMATE DUTY         PF6: TEMPORARY DUTYS
```

```
                    PERSONNEL ON LINE LISTING                DATE: 89279
                     SUMMARY, DUTY HISTORY              LAST UPDATE: 275

400648294  BOYER JOHN D                       ACC: 100 DESIG: 2105 GRD: 870516 GLI:

(------------------------ DUTY  STATION  HISTORY INFORMATION -----------------------
FROM  TO   DUTY STATION    T HOMEPORT DPL STA NOBC1 MOS NOBC2 MOS NOBC3 MOS U
8904       VP 19           C  MOFFET        15D 0110                            A
8706 8809 NHOSP SAN DIEGO  S  SDGO          23E 0024  15

(----- CURRENT DUTY ------) (------------------------- SUMMARY DATA -----------------
PRI DUTY: FLIGHT SURGEON    PRECEDENCE:  L  06672960  LOSS DTE: 9505    CODE: R
UICA: 09179 RPDT: 890426     DOR: 870516  FEBD: 870516  ETHNIC: X       RACE: C
BSC: 00160  PCN:            ACBD: 870516   PSD: 870516     DOB: 601019  SEX: M
                            ADBD: 870516  PLSD:
 (-- DEPN ---- DOS ---)     MSRT: 9505    SPDOR: 870516    SUB1: 1602J  DSC: 110
   PRI SEC  NR DATE          PRD: 9105     PRDO: 9105      SUB2:        CSC: 690
    1   0                     DS:                          SUB3:
```

00118

PERSONNEL ON-LINE LISTING DATE: 99279
SPECIALTIES, AQD, HEALTH LAST UPDATE: 275

400648294 BOYER JOHN D ACC: 100 DESIG: 2105 GRD: 870516 GLI:

(---------- AVIATION ----------)
( INCENTIVE ) ASI: J ABI: A ACCPSTAD:
ASBD: 000000 MOFCD: 000 NFOD: ADCPSTOD:
ACD: ANTHRO: HTAD: OYRE:

(---------- NUCLEAR ----------) (---------- SUBMARINE ----------)
NCD: 830602 NSAB: SSCD: SQD:
NSCD: NSI: SSED: SSI:

(---------- ADDITIONAL QUALIFICATION DESIGNATION ----------)
CTR: 01 (1): B9 AVMEDFLTOFF17 (5): (9):
(2): (6): (10):
(3): (7): (11):
(4): (8): (12):

(----- HEALTH PROFESSIONAL SERVICE -----)
HPPED: 870516 BCSTAD:
INSTAD: 870500 BCSTOD:
INSTOD: 880600

00119

** POLL ** EDUCATION DATA DATE: 89279 LAST UPDATE: 275

400648294 BOYER JOHN D ACC: 100 DESIG: 2105 GRD: 870516 GLI:
(--- NAVY ---) (---------- CIVILIAN ----------) (--- LANGUAGES ---) (- SUBSPEC
JUN SEN EDUC1 EDUC2 LANG1 LANG2 SUB1: 160
SEL: COLL: USUOFHS MD CODE: SUB2:
STAT: DUR: SKILL: SUB3:
COLL: YR CMP: 87 METHOD:
ELIG: SPON: PROF YR:
LVL: 9 DOCTOR
(--- GRE ---) MJR: 20 MEDICINE (-- NEW GI BILL --)
VERBAL: SPEC: 00 ACC-DECL: 1
QUAN: ACC-DATE: 666666
YR: (---------------------------- EDUCATION HISTORY ----------------------------)
APC: (- CURR -) (- PREV -) (- PREF -) (- SERVICE SCHOOLS -)
YR: YR: PREF1: CODE COMP DUR
(-GRAD REC BUS-) INCR: INCR: PREF2: SCH1:
DATE: PROG: PROG: PREF3: SCH2:
VERBAL: CURR: CURR: DATE: SCH3:
QUAN: STAT: STAT: NOT DSRD: SCH4:
TOTAL: GROUP: UNDR GRD: SCH5:
PRESEL: (-PG DECL-)
UG VALID: DATE: (--- ADJUSTED PREFERENCES ---)
RSN: (1): (2): (3):

PERSONNEL ON LINE LISTING DATE: 89279
PROMOTION, ADMIN, ACCTG LAST UPDATE: 275

*400648294 BOYER JOHN D *ACC: 100 DESIG: 2105 GRD: 870516 GLI: *

(------------------ SUMMARY ------------------) (--- PREVIOUS SERVICE ---
PEBD: 870516 DGAD INIT: 830702 PRES GR: J BRANCH:
ACBD: 870516 CURR: 870516 PERM GR: J FROM:
ADBD: 870516 SPOT IND: ELIG RK: 97 MONTHS:
DOR: 870516 GR: J FIRST COMM: HIGH GR:
FROCK: DOR: 870516 EFDT GR: 870516
COG: P YG: 83 AQC: X8
FAC: OCC: EXCP: T PRECEDENCE: L 06672960
CLAIM: 70B0 SUB MNGT CDE: 20 RESIG LTR: PROM STATUS:

(- SERVICE DATES -) (-- LOSS DATA -) (--- SEPARATION CODES ---) (- DATE OF RANK -
SVCD: CODE: R REA: DATE: W2:
PROF: 870516 DATE: 9505 SPD: BLG: ENSIGN: 830405
PROM: LT(JG): 000000
LT: 870516

(--- DESIG HIST ---) (- SOURCE CODES -) (----- UIC -----) LCDR:
DESIG DATE ORIG: 110 ACTUAL: 09179 CDR:
(1): 1975 8705 CURR: 680 PARENT: 09179 CAPT:
(2): PREV: 30642 FLAG:

00121

# APPLICATION FOR CORRECTION OF MILITARY RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552

(Please read instructions on reverse side BEFORE completing application.)

Form Approved
OMB No. 0704-0003
Expires Dec 31, 1988

**PRIVACY ACT**

**AUTHORITY:** Title 10, U.S. Code 1552, Executive Order 9397, N

**PRINCIPAL PURPOSE:** To apply for correction of a military record.

**ROUTINE USES:** To docket a case. Reviewed by board members to board. To compare facts present with evidence in th

**DISCLOSURE:** Voluntary. If information is not furnished, applica

**1. APPLICANT DATA**

a. BRANCH OF SERVICE (X one)

[ ] (1) ARMY [x] (2) NAVY [ ] (3) AIR FORCE [ ] (4) MARINE CORPS [ ] (5) COAST GUARD

| b. NAME (Last, First, Middle Initial) (Please print) | c. PRESENT PAYGRADE | d. SERVICE NUMBER (If applicable) | e. SOCIAL SECURITY NUMBER |
|---|---|---|---|
| Boyer, John D. | | | 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 |

| 2. TYPE OF DISCHARGE (If by court-martial, state type of court.) | 3. PRESENT STATUS, IF ANY, WITH RESPECT TO THE ARMED SERVICES (Active duty, Retired, Reserve, etc.) | 4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY |
|---|---|---|
| Not applicable | Active duty | Not applicable |

**5. ORGANIZATION AT TIME OF ALLEGED ERROR IN RECORD**

Uniformed Services University of the Health Sciences

**6. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C.** (No expense to the Government) (X one)

[ ] a. YES [x] b. NO

**7. COUNSEL** (If any)

| a. NAME (Last, First, Middle Initial) | b. ADDRESS (Street, City, State and Zip Code) |
|---|---|
| Glosser, Jeffrey M. | Whiteford, Taylor & Preston, Suite 400<br>888 17th Street, N.W., Washington, D.C. 20006-3939 |

**8. I REQUEST THE FOLLOWING CORRECTION OF ERROR OR INJUSTICE:**

See attached page.

**9. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST IN THE FOLLOWING PARTICULARS:**

See brief in support of this application, attached hereto.

**10. IN SUPPORT OF THIS APPLICATION I SUBMIT AS EVIDENCE THE FOLLOWING:** (If Veterans Administration records are pertinent to your case, give Regional Office location and Claim Number.)

See brief in support of this application, attached hereto.

**11. ALLEGED ERROR OR INJUSTICE DATA**

a. DATE OF DISCOVERY 1987

b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THIS APPLICATION.

**12. APPLICANT MUST SIGN IN ITEM 16. IF THE RECORD IN QUESTION IS THAT OF A DECEASED OR INCOMPETENT PERSON, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY APPLICATION. IF APPLICATION IS SIGNED BY OTHER THAN APPLICANT, INDICATE RELATIONSHIP OR STATUS BY MARKING APPROPRIATE BOX.**

[ ] a. SPOUSE [ ] b. WIDOW [ ] c. WIDOWER [ ] d. NEXT OF KIN [ ] e. LEGAL REP [ ] f. OTHER (Specify)

**13. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM.** (U.S. Code, Title 18, Sec. 287, 1001, provides a penalty of not more than $10,000 fine or not more than 5 years imprisonment or both.)

**14. COMPLETE CURRENT ADDRESS, INCLUDING ZIP CODE** (Applicant should forward notification of all changes of address.) c/o Jeffrey M. Glosser, Whiteford, Taylor & Preston Suite 400, 888 17th Street, N.W., Washington, D.C. 20006-3939

**DOCUMENT NUMBER** (Do not write in this space.)

| 15. DATE SIGNED | 16. SIGNATURE (Applicant must sign here.) |
|---|---|
| OCT 2 1989 | (BOYER) |

DD Form 149, FEB 86 Previous editions are obsolete.

00122

ITEM 8

Correction of my Naval record to reflect the following: (1) that I was awarded longevity and retired pay credit under the regulations and statutes in effect before the Defense Officer Personnel Management Act (DOPMA), Public Law 96-513, was enacted; (2) entitlement to all pay and allowances flowing from the foregoing; and (3) such other and further action as may be deemed necessary and appropriate in order to accord petitioner full and complete relief. (In response to an identical request for relief from members of the Class of 1986, the BCNR corrected their Naval records to reflect that they were "enrolled in . . . [USUHS] on 14 September 1981.")

BOARD FOR CORRECTION OF NAVAL RECORDS

DEPARTMENT OF THE NAVY

WASHINGTON, D.C. 20370-5100

| | | |
|---|---|---|
| IN RE APPLICATION OF | ) | |
| CERTAIN MEMBERS OF | ) | |
| THE UNIFORMED SERVICES | ) | DOCKET NO. |
| UNIVERSITY OF THE HEALTH | ) | |
| SCIENCES, CLASS OF 1987 | ) | |

---

BRIEF IN SUPPORT OF APPLICATION FOR

CORRECTION OF NAVAL RECORDS

---

JEFFREY M. GLOSSER
Attorney for Petitioners

WHITEFORD, TAYLOR & PRESTON
888 17th Street, N.W.
Suite 400
Washington, D.C. 20006
(202) 835-0606

TABLE OF CONTENTS

Page

NATURE OF THE CASE

RELIEF REQUESTED

STATEMENT OF FACTS

ARGUMENTS

I. The Class of 1987 Is Indistinguishable From The Class Of 1986 And Should Thus Be Granted The Same Relief As The Class of 1986.

A. The 1983-1984 USUHS Bulletin stated that the Class of 1987 would receive longevity credit.

B. The briefings by the USUHS Registrar, Peter J. Stavish, and his colleagues to the Class of 1987 either: (1) gave erroneous DOPMA information on the longevity service credit; or (2) were silent on the DOPMA issue.

1. The group briefing sessions.

2. Mr. Stavish's three inconsistent statements.

C. The USUHS acceptance letters did not contain any DOPMA information.

II. Acceptance Of USUHS Terminated All Other Alternatives.

III. The Class Of 1987 Has Been Treated Unjustly.

CONCLUSION

00125

## SUMMARY OF THE CASE

Petitioners are members of the Uniformed Services University of the Health Sciences (USUHS) Class of 1987. They matriculated at USUHS in August 1983, and were graduated in May 1987. They were not given credit for their four years at USUHS for either longevity or retired pay purposes. They believe that this action was erroneous and unjust, and that they should receive four years' constructive service credit, previously authorized by 37 U.S.C. §205(a)(7) and (8).[1/]

The Defense Officer Personnel Management Act (DOPMA) was enacted on December 12, 1980, and became effective September 15, 1981. Section 402 of DOPMA repealed the constructive service credit authorized by 37 U.S.C. §205(a)(7) and (8), which had authorized four years' credit to medical officers for computation of their basic and retired pay. Section 625(b) of DOPMA preserved credit for persons who were enrolled in USUHS on September 14, 1981.

### The Class Of 1986

Almost one year after the expiration of the September 14, 1981, "grandfather date", members of the USUHS Class of 1986 matriculated at USUHS in August 1982. The Class of 1986 had not been advised by USUHS officials (principally Peter J.

1/ Some of the petitioners have previously applied to the Board for Correction of Naval Records (BCNR), and were denied relief. For these petitioners, this application is a request for reconsideration.

Stavish, the Registrar, and his staff) that DOPMA had eliminated the constructive service credit.[2/] When the Class of 1986 first learned of the DOPMA change, more than one year after their matriculation, they applied to the BCNR requesting four years' longevity and retired pay credit. The BCNR granted such relief on August 15, 1985. Ex. 2. The BCNR relied, in substantial part, on an August 5, 1985, opinion by the Navy Judge Advocate General which stated that the "BCNR may legally act to backdate the enrollments [of the Class of 1986 to September 14, 1981], as did the Air Force Board for Correction of Military Records (AFBCMR), if BCNR considers it necessary in order to remove an injustice." Ex. 3, p. 1 (emphasis in original). The BCNR, duly authorized by the August 5, 1985, JAG opinion, corrected the records of members of the USUHS Class of 1986 to reflect that they were "enrolled in . . . [USUHS] on 14 September 1981." Ex. 2, p. 2.

## The Class Of 1987

On the same date, August 15, 1985, the BCNR denied relief to members of the USUHS Class of 1987, based upon the conclusion that the members of the Class of 1987 had "not established that [they] were briefed improperly." Ex. 4.

---

2/ A 3 April 1984 statement from Mr. Stavish admitted that the Class of 1986 had not been informed of the DOPMA changes, and instead were advised that they would receive constructive service credit. Ex. 1.

The BCNR gave substantial weight to a February 12, 1985, letter from Peter J. Stavish, the USUHS Director of Admissions/Registrar, which stated that he correctly advised the Class of 1987: (1) that they would not receive longevity and retirement credit for their four USUHS years; and (2) that information in the USUHS Bulletin to the contrary was incorrect. Id. The BCNR concluded that: "even though the Director of Admissions/Registrar did not give all the briefings, that the material presented was done so under his guidance and in accordance with the terms of the current law (DOPMA)." Id.

Petitioners contend that the Class of 1987 is indistinguishable from the Class of 1986 and should thus be granted the same relief. First. The briefings by the USUHS Registrar, Peter J. Stavish, and his staff, to the Class of 1987 either: (1) gave erroneous DOPMA information on the longevity service credit; or (2) were silent on the DOPMA issue. Second. The 1983-1984 USUHS Bulletin stated that the Class of 1987 would receive longevity and retirement credit. Petitioners were not advised by Mr. Stavish or his staff (prior to matriculation) that the Bulletin was incorrect. Third. The USUHS acceptance letters did not contain any information regarding the effect of DOPMA.

00128

In sum, the only difference between the Class of 1986 and the Class of 1987 is Mr. Stavish's statements. All other circumstances are the same. Petitioners herein respectfully request that the BCNR reconsider the weight properly accorded Mr. Stavish's February 12, 1985, statement.

RELIEF REQUESTED

In these circumstances, petitioners respectfully request that the Board correct their Naval records to reflect the following: (1) that they were awarded longevity and retired pay credit under the regulations and statutes in effect before the Defense Officer Personnel Management Act (DOPMA), Public Law 96-513, was enacted; (2) entitlement to all pay and allowances flowing from the foregoing; and (3) such other and further action as may be deemed necessary and appropriate in order to accord petitioners full and complete relief. (In response to an identical request for relief from members of the Class of 1986, the BCNR corrected their Naval records to reflect that they were "enrolled in . . . [USUHS] on 14 September 1981.")

STATEMENT OF FACTS

Prior to September 15, 1981, 37 U.S.C. §205(a)(7) and (8) provided that students at the Uniformed Services University of the Health Sciences (USUHS) would receive credit for their four years at USUHS for both longevity and retired pay purposes. The Defense Officer Personnel Management Act (DOPMA) was enacted on December 12, 1980, and became effective September 15, 1981.[3/] Section 402 of DOPMA repealed the constructive service credit authorized by clauses (7) and (8) of Section 205(a), which had authorized four years' credit to medical and dental officers for computation of their basic and retired pay.

Section 625(b) of DOPMA preserved credit for persons who were enrolled in USUHS on September 14, 1981, and who would otherwise have lost the constructive service credit. Individuals who entered USUHS after September 14, 1981, were not "grandfathered" under §625(b).[4/]

---

3/ Public Law 96-513, 94 Stat. 2904, 10 U.S.C. §101 note. The purpose of deferring the effective date for nine months was to allow sufficient time for problems in the implementation of the Act to be identified and corrected by remedial legislation. See H.R. Rep. No. 97-141, 97th Cong., 1st Sess. 1 (1981), reprinted in 1981 U.S. Code Cong. & Ad. News 24. These problems were subsequently identified and addressed in the DOPMA Technical Corrections Act, Public Law 97-22, approved July 10, 1981, 95 Stat. 124.

4/ 94 Stat. 2952, 10 U.S.C. §611 note. The DOPMA Technical Corrections Act did not extend the September 14, 1981, grandfather clause.

00130

The Report of the House Committee on Armed Services explained the grandfather clause as follows:[5/]

> Section 625 of the Act would provide that the Act will not affect the years of service credited to an officer before the effective date of the Act. It specifically would provide that such service creditable for computation of basic pay and retired pay in effect on the day before the effective date of the Act would continue to be creditable after the effective date. In addition, it would specifically provide that individuals in programs leading to an appointment which would result in the award of constructive service creditable for computation of basic pay and retired pay would be granted such credit and that it would be creditable for such purposes. This is necessary since such individuals have been counselled regarding these entitlements and have entered these programs, at least in part, because of their existence. (Emphasis added.)[6/]

Members of the USUHS Class of 1986 matriculated at USUHS in August 1982, nearly one year after the expiration date of the grandfather clause. Since members of the Class of 1986 were not "grandfathered", they applied to their respective service correction boards, requesting that their records be corrected to reflect their entitlement to the benefits of the grandfather clause, viz., entitlement to longevity and

5/ H.R. Rep. No. 96-1462, 96th Cong., 2d Sess. 148-149, see 39-40 (1980), partially reprinted in 1980 U.S. Code Cong. & Ad. News 6333, 6370-6371.

6/ The underscored rationale applies with equal force to both the USUHS Class of 1986 and the Class of 1987.

retired pay credit for their four years spent at USUHS.

Thereafter, in April 1985, the Air Force Board for Correction of Military Records (AFBCMR) granted relief to all Air Force members of the Class of 1986. Subsequently, each of the remaining correction boards granted the same relief.7/ The rationale for the decision of the AFBCMR to grant relief was explained as follows:

> 2. We support correction of these records for the following reasons:
>
> * * *
>
> b. The school bulletin for 1981-82 stated that the four years spent in medical school would count for pay purposes both upon graduation and at the time of retirement upon completion of 20 years' active duty. . . .
>
> c. The Registrar and Admissions Office personnel on several occasions also briefed that these four years would count for pay purposes both upon graduation and at time of retirement.
>
> d. No written guidance on DOPMA's enactment was received at USUHS until September 1982, after the Class of 86 had already started

7/ A 2 April 1985 Department of Defense directive suggested that this issue be resolved uniformly by each of the Services: "In view of the multi-Service nature of this problem, our staffs should explore a resolution of the matter that is consistent within the Department of Defense." Ex. 5. The BCNR's grant of relief is attached as Ex. 2.

the first year of medical school.[8/]

e. All USUHS students, upon receiving their conditional offer of acceptance, must turn down all other offers or acceptances from other schools. Therefore, at time of final acceptance, if they wanted to attend medical school they were forced into a position of accepting the USUHS offer as all other options were then closed. The class feeling is that the rules were changed after ensuring no other options were left. For students who were already on active duty, each student interviewed would have pursued other career options (e.g., pilot training, medical school on G.I. Bill while staying in Reserves) rather than lose that four years altogether.

f. Written contracts were signed after the oral miscounselings. No student had the benefit of legal counsel to interpret or explain what they were signing. The witnesses that signed these contracts ranged from mothers-in-law and secretaries to next door neighbors. Some students were directed to local recruiters; however, in each case surveyed they had to explain the USUHS program to the recruiter.[9/]

g. While a DOPMA statement was included in the contract, it was not clear nor was it identified

---

8/ This "written guidance" was a 3 September 1982 letter from OASD to USUHS. Ex. 6.

9/ The Air Force was the only service that used such a contract. Thus, Naval officers lacked even this possibility of being informed of the DOPMA changes.

as a change in policy. One student stated that he interpreted the statement ". . . no credit given for participating in USUHS" to mean the years wouldn't count while on active duty but they would once retirement was reached -- a logical conclusion since this is what was written in the 1981-82 USUHS Bulletin. Further, other students interpreted that they wouldn't get longevity pay while in USUHS to be synonymous with the fact that they wouldn't get promoted while in USUHS; but, upon graduation the longevity pay would be retroactive, coincident with automatic promotion to Captain.

h. Lack of careful handling of these contracts is further evidenced by a missing name on one agreement, and several agreements missing from MPC records. These problems support the class perception that "no one" cared enough to set the record straight.

i. It costs approximately $112,000 to train each USUHS student. If, based on their perception of unfair treatment they separate following their initial commitment, this loss of expended training dollars, lost salary dollars, loss of experience, plus the cost of higher retraining dollars due to inflation will far exceed what it will cost to correct their military records. Further, their new perception that the Air Force really "does care" may pay off in terms of who these new doctors recruit for Air Force service in the future.

00134