**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JOHN D. BOYER, | ) | |
| *Plaintiff*, | ) | |
| v. | ) | No. 06-685C |
| THE UNITED STATES, | ) | (Judge Bush) |
| *Defendant*. | ) | |

**PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Plaintiff, pursuant to Rule 52.1(b) of the United States Court of Federal Claims, hereby submits this cross-motion for judgment on the administrative record.

The grounds supporting this cross-motion are fully set forth in the accompanying memorandum of law, which includes Plaintiff's argument in opposition to Defendant's motion for judgment on the administrative record. Pursuant to Rule 52.1(b), this cross-motion is accompanied by a Statement of Facts as to which Plaintiff contends there is no genuine issue.

Respectfully submitted,

/s

David P. Sheldon (446039)
LAW OFFICES OF DAVID P. SHELDON, PLLC
Barracks Row
512 8th Street, S.E.
Washington, D.C. 20003
(202) 546-9575

Attorney for Plaintiff

October 24, 2007

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JOHN D. BOYER, | ) | |
| *Plaintiff*, | ) | |
| v. | ) | No. 06-685C |
| THE UNITED STATES, | ) | (Judge Bush) |
| *Defendant*. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD, AND IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Plaintiff submits this memorandum of points and authorities in support of Plaintiff's cross-motion for judgment on the administrative record. This memorandum is also submitted in opposition to Defendant's motion for judgment on the administrative record. Plaintiff respectfully requests that this Court grant a hearing on this matter.

**STATEMENT OF THE ISSUE**

Whether the decision of the Board for Correction of Naval Records (BCNR) denying Plaintiff's application for the correction of his naval records to reflect constructive service credit (CSC) for four years of funded medical education at the Uniformed Services University of the Health Sciences (USUHS) was arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

**STATEMENT OF THE CASE**

Plaintiff was appointed as an Ensign in the Navy on April 5, 1984. Administrative Record (AR) 121. He matriculated at USUHS in August 1983, and graduated in May 1987, as a member of the class of 1987. AR 95. On June 15, 1987, he entered active duty service; he voluntarily

resigned his commission upon completion of his obligated service and was discharged from the Navy at the rank of Commander on July 2, 2001. First Amended Complaint (Compl.) ¶¶ 26-28.

Before September 15, 1981, students at USUHS who became military medical officers were entitled to CSC, so their four years of medical school were creditable for the computation of their basic pay. 37 U.S.C. § 205(a) (1962). The Defense Officer Personnel Management Act of 1980, Pub. L. No. 96-513, § 402, 94 Stat. 2835 (DOPMA), repealed the credit, but contained a saving provision for anyone already enrolled at USUHS thus allowing members of the classes of 1985 and earlier to receive CSC. DOPMA § 625(b)(2). The saving provision of DOPMA did not apply to members of the Class of 1986, but because they matriculated based on faulty representations of CSC, they were all eventually granted blanket relief by the correction boards of the Air Force (AFBCMR), Army (ABCMR), and Navy (BCNR). AR 1-2.

Members of Plaintiff's class similarly matriculated based on faulty representations of CSC. *See* AR 10-18, 41, 60, 82-83, 85, 87-88, 95. In a September 29, 1998 letter, the General Counsel for USUHS specifically acknowledged widespread if not universal "unintentional miscounseling" of Plaintiff's class regarding CSC, and recommended that the BCMRs grant the same relief to the Class of 1987 as they had to the Class of 1986. AR 12-13, 87-88. This assessment and recommendation echoed those previously made by the President/Dean of the medical school at USUHS. AR 14, 82-83, 85.

Plaintiff declared in an affidavit that he was never informed of any rule or regulation or law which would prevent him from earning pay and credits for his years at USUHS, and never learned of DOPMA 1981 modifications until after matriculating at USUHS. AR 95. Had he known of the DOPMA changes in time to accept entrance into another medical school, Plaintiff would not have attended USUHS. *Id.* The 1983-1984 USUHS Bulletin was made available to him prior to

matriculation and he relied on its representations at page 45 regarding pay: "Longevity credit for pay proposed accrues for students for time spent in school." *Id.* His classmates have made similar sworn statements that they were provided false and inaccurate information regarding CSC prior to matriculating at USUHS. AR 14, 69-80.

Eventually, members of Plaintiff's class were granted relief by the AFBCMR. AR 2, 42, 53. The ABCMR also subsequently granted relief to members of Plaintiff's class, because members of Plaintiff's class had been misled by the advisors who briefed them prior to matriculation, and also because the AFBCMR had granted relief to members of Plaintiff's class. AR 12-13, 41-42, 52-53, 60, 87-88. However, despite such relief granted by the AFBCMR and ABCMR, the BCNR has refused to grant relief to Plaintiff or other Navy personnel in his class. AR 1-2, 10-18, 42.

Plaintiff, along with other members of his class, initially applied to the BCNR in October 1989, but that application was denied. AR 113-14, 122-57. His 1992 request for reconsideration was also denied. AR 96-97, 98-110. Plaintiff submitted another petition for reconsideration on May 1, 2003. AR 8-95. It was rejected by the BCNR executive director for lack of new material evidence that warranted reconsideration. AR 6-7. After demanding an explanation for such rejection, Plaintiff was informed that his petition had been considered after all by a panel of the BCNR who then denied it. AR 1-2, 5.

In that final decision, the BCNR found Plaintiff's evidence insufficient to establish material error or injustice, noting: the relief granted to the Class of 1986 was based on unique circumstances because those students were recruited and commenced school in 1982; since the AFBCMR and ABCMR previously granted relief to their personnel in the Class of 1986, not to do so for Navy personnel would have resulted in a clear inequity; the AFBCMR was wrong to grant relief to the Class of 1986 and to members of Plaintiff's class regardless of recruiter misinformation, and such

relief had created serious inequities within Plaintiff's class. AR 1-2. The BCNR failed to address Plaintiff's evidence that the ABCMR also granted relief to members of his class. AR 1-2.

**STATEMENT OF FACTS**

Plaintiff's Statement of Facts, filed separately pursuant to Rule 52.1 (b) of the Rules of the United States Court of Federal Claims (RCFC), is incorporated herein by reference.

**STANDARD OF REVIEW**

In reviewing a motion for judgment on the administrative record under RCFC 52.1, the Court determines whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Protection, Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citation omitted). The process is "akin to an expedited trial on the paper record." *Id.* That record can be supplemented. *Six v. United States*, 71 Fed. Cl. 671, 680 (2006).

The Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*., authorizes this Court to review decisions of the BCNR. Such decisions "are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983). The APA standard of review mandates "that an agency take whatever steps it needs to provide an explanation that will enable the court to evaluate the agency's rationale at the time of decision." *Pension Ben. Guar. Corp. v. LTV Corp*., 496 U.S. 633, 654 (1990). In reviewing an agency decision, "the court conducting the review must have sufficient information to determine that the BCNR's decisions were proper." *Smith v. Dalton*, 927 F. Supp. 1, 5 (D.D.C. 1996). "Therefore, although the agency need not provide an 'extensive exegesis' of the rationale underlying its decisions, it must sufficiently discuss its reasoning so as to allow a court to review its decisions." *Id*. (citations omitted.). "A court cannot give as much deference to the Board's determination when an agency does not specify the factual or legal grounds for its decision." *Id*. (citations omitted).

"Finally, in reviewing an administrative body's decision, the court must examine whether or not the agency has considered all of the evidence before it, and if so, if it has stated why evidence contrary to the final decision was 'disregarded or given less weight.'" *Id.* (citation omitted).

## ARGUMENT

### I. The BCNR's Decision Is Arbitrary, Capricious, Unsupported by Substantial Evidence, and Contrary to Law.

#### A. The BCNR failed to address Plaintiff's non-frivolous argument that the ABCMR granted relief to members of Plaintiff's class.

The BCNR decision was arbitrary and capricious because it fails to address Plaintiff's evidence and argument that the ABCMR, as well as the AFBCMR, granted relief to members of his class. AR 1-2, 11-15. Such failure of the BCNR to respond to one of the arguments raised by Plaintiff "which do not appear frivolous on their face and could affect the Board's ultimate disposition, is arbitrary." *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 55 (D.D.C. 2005) (citing *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997), and *Mudd v. Caldera*, 26 F.Supp.2d 113, 123 (D.D.C. 1998)). The BCNR's decision is thus "arbitrary and capricious" because it fails "to address a seemingly meritorious argument." *Mudd*, 26 F.Supp.2d at 120-21. If the BCNR decides to disregard such an argument, then it must be expressly indicated:

> If the agency decides to disregard this argument, then it must **expressly** indicate that it has done so. Otherwise neither [Plaintiff] nor this court would be able to discern whether the [Board] considered and was unpersuaded by those factors or whether the [Board] simply excluded them from its decision making process. Moreover, if the [Board] excludes those factors from consideration it must explain its rationale for doing so.

*Calloway*, 366 F. Supp. 2d at 55 (emphasis added).

The BCNR is obligated to "examine relevant data and articulate a satisfactory explanation for their decisions." *Rominger v. United States*, 72 Fed. Cl. 268, 273 (2006). The BCNR's decision

here should be overturned because the BCNR has "fail[ed] to support its decision with a reasoned explanation of an important issue." *Id.* Although the BCNR need not consider each of Plaintiff's arguments on its merits, "'if it decides not to address these arguments, it must explain why.'" *Calloway*, 366 F. Supp. 2d at 55 (citation omitted). *See also Six*, 71 Fed. Cl. at 679-80 (remand ordered because the BCNR "did not consider or address evidence before it that may have had the effect of changing the result"). Here, the BCNR failed to address Plaintiff's new evidence and key argument that not only the AFBCMR, but also the ABCMR, had granted relief to members of his class. AR 1-2, 11-15. Therefore, the BCNR's decision was arbitrary and capricious and must be set aside for violating the APA. *Frizelle*, 111 F.3d at 177. *See also Calloway*, 366 F. Supp. 2d at 55; *Dickson*, 68 F.3d 1396, 1405 (D.C. Cir. 1995).

**B. The BCNR failed to correct an injustice clearly presented in the record.**

"'[W]hen a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its [primary] mandate" and "such a violation . . . is arbitrary and capricious." *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004) (quoting *Yee v. United States*, 512 F.2d 1383, 1387 (Ct. Cl. 1975)). *See also Skaradowski v. United States*, 471 F.2d 627, 628 (Ct. Cl. 1973). The BCNR's decision here reveals just such an injustice. The BCNR acknowledged that it had granted relief to all Navy personnel in the Class of 1986 for the specific reason that the AFBCMR and ABCMR had previously granted relief to their personnel in that class "and **to not do the same for the Navy personnel would have resulted in a clear inequity**." AR 1-2 (emphasis added). This same "clear inequity" recognized by the BCNR as exisiting in the Class of 1986 also exists in Plaintiff's Class of 1987, because the AFBCMR and ABCMR have granted relief to members of the Class of 1987. Therefore, the BCNR's refusal to grant relief to any Navy

personnel in the Class of 1987, including Plaintiff, is arbitrary and capricious. *Roth*, 378 F.3d at 1381; *Yee*, 512 F.2d at 1387.

**C. The BCNR's decision was not based upon any evaluation of Plaintiff's individual circumstances.**

Defendant argues that the BCNR's decision should be upheld because it was "based upon an evaluation of [Plaintiff's] individual and unique circumstances." Def. Memo at 8. *See also id.* at 10. However, the record clearly refutes Defendant's argument. In fact, the record demonstrates that, far from basing its decision on Plaintiff's individual circumstances, the BCNR based its decision to reject Plaintiff's application solely on the fact that he was in the Navy. Such conclusion is supported by the executive director's summary rejection of Plaintiff's request for reconsideration in May 2003. It is also evident from the language of the BCNR's final decision criticizing the AFBCMR: "It is this Board's position that the AFBCMR was wrong in granting blanket relief to the Class of 1986, and that it was also **wrong in granting relief to any members of the Class of 1987 regardless of recruiter misinformation**." AR 2 (emphasis added). The BCNR did not evaluate Plaintiff's individual circumstances and weigh the evidence that Plaintiff presented. Instead, the BCNR refused to grant relief to any member of the Class of 1987, and then arbitrarily refused to reconsider that decision, regardless of the substantial evidence presented by Plaintiff.

**D. The BCNR improperly disregarded the sworn statements of Plaintiff, a respected physician and former Navy Commander.**

Defendant asserts that there is no evidence that Plaintiff was a member of the "segment" of the class that received inaccurate information regarding DOPMA. Def. Memo at 7. Such statement misstates the record and is directly contradicted by Plaintiff's affidavit. AR 95. Further, Defendant argues that there is no evidence, aside from Plaintiff's affidavit, that he would not have attended USUHS had he been correctly informed regarding CSC. Def. Memo at 7. Defendant thus concludes

that the BCNR's finding that the misinformation was not a significant factor in Plaintiff's decision to attend USUHS is supported by substantial evidence. *Id.* at 7-8.

Plaintiff declared unequivocally in his affidavit: "Had I known of the DOPMA changes in time to accept entrance into another medical school, I would not have attended USUHS." AR 95. Yet, in direct contradiction of Plaintiff's affidavit, the BCNR found that "the Board is not persuaded that the alleged miscounseling was a pivotal factor in your decision to accept a scholarship." AR 1. In essence, the "primary 'essential fact'" that the BCNR used for denying Plaintiff's application was its conclusion that "he could not be believed." *Van Cleave v. United States*, 70 Fed. Cl. 674, 679 (2006). Yet the record contains no evidence to support such a negative conclusion regarding Plaintiff's credibility. Such an unsupported attack on the character and credibility of a physician and former Navy Commander of Plaintiff's stature is wholly improper and appropriate. *See id.* It is, moreover, "*per se* arbitrary and capricious." *Id.* at 684.

In sum, the record contains no evidence regarding Plaintiff's decision to attend USUHS, other than his affidavit. The BCNR's decision is directly contradicted by that affidavit. Therefore, the BCNR's decision must be set aside because it is not supported by substantial evidence.

## II. The BCNR's Decision Violates the Equal Protection Component of the Due Process Clause of the Fifth Amendment.

Plaintiff seeks military pay to which he is entitled, on grounds that the BCNR's decision in his case is arbitrary, capricious, contrary to law, or unsupported by substantial evidence. He was treated differently than similarly situated individuals in the Class of 1986 and in the Class of 1987. As discussed above, Plaintiff relied to his detriment on misinformation he was given regarding CSC, just like members of the Class of 1986 and the Class of 1987. But whereas all members of the Class

of 1986, and Army and Air Force members of the Class of 1986 have been granted CSC by Defendant, Plaintiff has been treated differently for no rational basis.

It is true that courts must be careful about second-guessing military judgments that bear upon military capability or readiness. *Able v. United States*, 155 F.3d 628, 634 (2d Cir. 1998). However, the issue here is not the composition of the military, but rather "the society's legal obligations to those who are no longer within the military forces." *Fisher v. United States*, 402 F.3d 1167, (Fed. Cir. 2005)

Because Plaintiff was treated differently by Defendant United States than similarly situated individuals who were literally and figuratively in the same class and because such disparate treatment bears no rational relationship to any legitimate governmental purpose, such treatment violates Plaintiff's rights under the equal protection component of the Due Process Clause of the Fifth Amendment. *See Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). The government is prohibited "from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Thus the BCNR's decision is contrary to law.

**CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that Defendant's motion for judgment on the administrative record be denied, and that Plaintiff's cross-motion for judgment on the administrative record be granted.

Respectfully submitted,

/s

David P. Sheldon (446039)
LAW OFFICES OF DAVID P. SHELDON, PLLC
Barracks Row
512 8th Street, S.E.
Washington, D.C. 20003
(202) 546-9575

Attorney for Plaintiff

October 24, 2007

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JOHN D. BOYER, | ) | |
| *Plaintiff*, | ) | |
| v. | ) | No. 06-685C |
| THE UNITED STATES, | ) | (Judge Bush) |
| *Defendant*. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF FACTS**

Plaintiff respectfully submits this response to Defendant's statement of facts filed in support of Defendant's motion for judgment on the administrative record.

1. Plaintiff, Dr. John D. Boyer, was appointed as an Ensign in the Navy on April 5, 1983. Administrative Record (AR) 121.

**RESPONSE**: Agree.

2. Dr. Boyer matriculated to the Uniformed Services University of the Health Sciences ("USUHS") in August 1983. AR 95.

**RESPONSE**: Agree.

3. Dr. Boyer graduated from USUHS in May 1987, as a member of the class of 1987. AR 95.

**RESPONSE**: Agree.

4. Dr. Boyer entered active duty in the Navy on June 15, 1987. First Amended Complaint (Compl.) ¶ 26.

**RESPONSE**: Agree.

5. On July 2, 2001, Dr. Boyer completed his obligated service to the Navy, voluntarily resigned his commission, and was discharged from the military at the rank of Commander. Compl. ¶ 27, 28.

**RESPONSE**: Agree.

6. Prior to September 15, 1981, medical students who matriculated at USUHS and became medical officers in the military were entitled to receive a constructive service credit of up to four years. 37 U.S.C. § 205(a).

**RESPONSE**: Agree.

7. Effective September 15, 1981, the constructive service credit was repealed by the Defense Officer Personnel Management Act of 1980, Pub. L. No. 96-513, § 402, 94 Stat. 2835 (1980) ("DOPMA").

**RESPONSE**: Agree.

8. DOPMA contained a saving provision stating that it had no effect upon the constructive service credit of any person who, upon the day before the effective date of DOPMA, had already been enrolled in USUHS. DOPMA § 625(b)(2). Thus, the saving provision permitted members of the classes of 1985 and earlier to receive the constructive service credit.

**RESPONSE**: Agree.

9. On October 2, 1989, Dr. Boyer, along with other navy personnel of the USUHS class of 1987, applied to the Board for Correction of Naval Records ("BCNR") to receive four years of constructive service credit. AR 122-157.

**RESPONSE**: Agree.

10. On July 10, 1990, the BCNR denied Dr. Boyer's application, finding that the evidence did not establish probable material error or injustice. AR 113. The BCNR determined that

DOPMA was the controlling legislation, and that DOPMA precluded granting constructive service credit to members of the class of 1987. *Id.* The BCNR further determined that to grant Dr. Boyer's request for constructive service credit "would be contrary to both the spirit and clear intent of the law." *Id.* As to Dr. Boyer's claim that he was "misled by erroneous advice during recruitment as to constructive service credit," the BCNR "was not convinced that the miscounseling, if any, should not reasonably have been a principal motivating factor in [Dr. Boyer's] decision to pursue a medical education at USUHS." *Id.* The BCNR considered its previous grant of relief to members of the class of 1986 and concluded that "such action was based on the unique circumstances surrounding those petitions, i.e., both the Air Force and Army Correction Boards had previously granted relief to Air Force and Army personnel in the Class of 1986, and not to do so for Navy personnel would result in an inequity." AR 113-14. However, the BCNR stated that "this reasoning does not apply to the Class of 1987 since the other correction boards have not acted favorably on similar petitions." AR 114.

**RESPONSE**: Agree.

11. On May 25, 1992, Dr. Boyer submitted a petition for reconsideration to the BCNR, again seeking four years of constructive service credit. AR 98-112. In his petition, Dr. Boyer asserted that "at no time from the initiation of [his] medical school applications until many months after matriculation was [he] correctly informed that the four years spent . . . at USUHS would not count for the purposes of pay and retirement." AR 99.

**RESPONSE**: Agree.

12. In a letter dated June 25, 1992, W. Dean Pfeiffer, the Executive Director of the BCNR, denied Dr. Boyer's request for reconsideration, concluding that although Dr. Boyer had

submitted some new evidence, none of the new evidence was material, meaning that if it was presented to the BCNR, the decision would "inevitably be the same." AR 96-97.

**RESPONSE**: Agree.

13. On May 1, 2003, Dr. Boyer submitted another petition for reconsideration to the BCNR. AR 8-95. In this petition, Dr. Boyer asserted that new information had been obtained that showed that the BCNR's initial decision was erroneous and should be corrected. *See* AR 10-11. Specifically, Dr. Boyer alleged that some Army and Air Force members of the class of 1987 had been granted relief, that there was some new evidence that members of the class of 1987 had been misinformed about the constructive service credit, and that there had been concerns expressed by members of Congress over the need for consistency in pre-DOPMA service credit. *See* AR 10- 18.

**RESPONSE**: Agree.

14. In a letter dated July 9, 2003, Mr. Pfeiffer denied Dr. Boyer's request for reconsideration, stating that although Dr. Boyer had submitted some new evidence, none of the new evidence was material, meaning that if it was presented to the BCNR, the decision would "inevitably be the same." AR 6-7.

**RESPONSE**: Agree.

15. On July 29, 2003, Dr. Boyer requested an explanation of the legal basis for the authority of the BCNR executive director to reject Dr. Boyer's petition without BCNR consideration. AR 5. Dr. Boyer also requested an explanation of which evidence was considered new, why it was not considered material, and which old evidence did not warrant reconsideration in light of the new evidence. *Id.*

**RESPONSE**: Agree.

16. In a February 12, 2004 letter, the BCNR informed Dr. Boyer that a three-member panel considered his application and denied it. AR 1-2. The BCNR determined that, after considering the entire record, the evidence submitted was "insufficient to establish the existence of probable material error or injustice." AR 1. The BCNR held that DOPMA "expressly precludes granting constructive service credit." *Id.* Thus, the BCNR stated, "absent special circumstances that give rise to a clear injustice it would be contrary to both the spirit and express letter of the law to grant requests for service credit." *Id.* The BCNR found that the circumstances of Dr. Boyer's case failed to show that he suffered such an injustice. *Id.* The BCNR was not persuaded that any alleged erroneous advice was a pivotal factor in Dr. Boyer's decision to attend USUHS. *Id.* The BCNR stated that the fact that relief was granted to the class of 1986 was not an adequate basis for granting Dr. Boyer relief. *Id.* It explained that relief was granted to the class of 1986 based upon unique circumstances, namely that they had been recruited in 1982, and that the Army and Air Force correction boards had granted relief to that class "and not to do the same for the Navy personnel would have resulted in a clear inequity." AR 1-2. The BCNR noted that the Air Force Correction Board ("AFBCMR") granted relief to some members of the class of 1987, but that it had done so without coordination with the Army or Navy, as was encouraged by the Assistant Secretary of Defense. AR 2. The BCNR also noted that "the law is clear that actions taken by one service board need not be blindly replicated by other boards." *Id.* The BCNR stated that its position was that the AFBCMR was wrong in granting blanket relief to the class of 1986 and wrong in granting relief to members of the class of 1987, and that such action has created "serious inequities" within the class of 1987. *Id.*

**RESPONSE**: Agree.

Respectfully submitted,

/s

David P. Sheldon (446039)
LAW OFFICES OF DAVID P. SHELDON, PLLC
Barracks Row
512 8th Street, S.E.
Washington, D.C. 20003
(202) 546-9575

Attorney for Plaintiff

October 24, 2007

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JOHN D. BOYER, | ) | |
| *Plaintiff*, | ) | |
| v. | ) | No. 06-685C |
| THE UNITED STATES, | ) | (Judge Bush) |
| *Defendant*. | ) | |

**PLAINTIFF'S STATEMENT OF FACTS**

Pursuant to Rule 52.1 of the United States Court of Federal Claims, Plaintiff respectfully submits the following statement of facts in support of his cross-motion for judgment upon the administrative record, and in opposition to Defendant's motion for judgment on the administrative record.

1. Plaintiff was appointed as an Ensign in the Navy on April 5, 1984. Administrative Record (AR) 121.

2. He matriculated at USUHS in August 1983, and graduated in May 1987, as a member of the class of 1987. AR 95.

3. On June 15, 1987, he entered active duty service; he voluntarily resigned his commission upon completion of his obligated service and was discharged from the Navy at the rank of Commander on July 2, 2001. First Amended Complaint (Compl.) ¶¶ 26-28.

4. Before September 15, 1981, students at USUHS who became military medical officers were entitled to CSC, so their four years of medical school were creditable for the computation of their basic pay. 37 U.S.C. § 205(a) (1962). The Defense Officer Personnel Management Act of 1980, Pub. L. No. 96-513, § 402, 94 Stat. 2835 (DOPMA), repealed the credit, but contained a

saving provision for anyone already enrolled at USUHS thus allowing members of the classes of 1985 and earlier to receive CSC. DOPMA § 625(b)(2). The saving provision of DOPMA did not apply to members of the Class of 1986, but because they matriculated based on faulty representations of CSC, they were all eventually granted blanket relief by the correction boards of the Air Force (AFBCMR), Army (ABCMR), and Navy (BCNR). AR 1-2.

5. Members of Plaintiff's class similarly matriculated based on faulty representations of CSC. AR 10-18, 41, 60, 82-83, 85, 87-88, 95.

6. In a September 29, 1998 letter, the General Counsel for USUHS specifically acknowledged widespread if not universal "unintentional miscounseling" of Plaintiff's class regarding CSC, and recommended that the BCMRs grant the same relief to the Class of 1987 as they had to the Class of 1986. AR 12-13, 87-88. This assessment and recommendation echoed those previously made by the President/Dean of the medical school at USUHS. AR 14, 82-83, 85.

7. Plaintiff declared in an affidavit that he was never informed of any rule or regulation or law which would prevent him from earning pay and credits for his years at USUHS, and never learned of DOPMA 1981 modifications until after matriculating at USUHS. AR 95. Had he known of the DOPMA changes in time to accept entrance into another medical school, Plaintiff would not have attended USUHS. *Id.* The 1983-1984 USUHS Bulletin was made available to him prior to matriculation and he relied on its representations at page 45 regarding pay: "Longevity credit for pay proposed accrues for students for time spent in school." *Id.*

8. Plaintiff's classmates have made similar sworn statements that they were provided false and inaccurate information regarding CSC prior to matriculating at USUHS. AR 14, 69-80.

9. Eventually, members of Plaintiff's class were granted relief by the AFBCMR. AR 2, 42, 53.

10. The ABCMR also subsequently granted relief to members of Plaintiff's class, because members of Plaintiff's class had been misled by the advisors who briefed them prior to matriculation, and also because the AFBCMR had granted relief to members of Plaintiff's class. AR 12-13, 41-42, 52-53, 60, 87-88.

11. However, despite such relief granted by the AFBCMR and ABCMR, the BCNR has refused to grant relief to Plaintiff or other Navy personnel in his class. AR 1-2, 10-18, 42.

12. Plaintiff, along with other members of his class, initially applied to the BCNR in October 1989, but that application was denied. AR 113-14, 122-57. His 1992 request for reconsideration was also denied. AR 96-97, 98-110.

13. Plaintiff submitted another petition for reconsideration on May 1, 2003. AR 8-95. It was rejected by the BCNR executive director for lack of new material evidence that warranted reconsideration. AR 6-7. After demanding an explanation for such rejection, Plaintiff was informed that his petition had been considered after all by a panel of the BCNR who then denied it. AR 1-2, 5.

14. In that final decision, the BCNR found Plaintiff's evidence insufficient to establish material error or injustice, noting: the relief granted to the Class of 1986 was based on unique circumstances because those students were recruited and commenced school in 1982; since the AFBCMR and ABCMR previously granted relief to their personnel in the Class of 1986, not to do so for Navy personnel would have resulted in a clear inequity; the AFBCMR was wrong to grant relief to the Class of 1986 and to members of Plaintiff's class regardless of recruiter misinformation, and such relief had created serious inequities within Plaintiff's class. AR 1-2. The BCNR failed to address Plaintiff's evidence that the ABCMR also granted relief to members of his class. AR 1-2.

Respectfully submitted,

/s

David P. Sheldon (446039)
LAW OFFICES OF DAVID P. SHELDON, PLLC
Barracks Row
512 8th Street, S.E.
Washington, D.C. 20003
(202) 546-9575

Attorney for Plaintiff

October 24, 2007